DISCIPLINARY COUNSEL *v*. BROWN.

[Cite as *Disciplinary Counsel v. Brown*, 121 Ohio St.3d 423, 2009-Ohio-1152.]

*Unauthorized practice of law — Injunction issued and civil penalty imposed.*

(No. 2008-1573 — Submitted November 19, 2008 — Decided March 19, 2009.)

ON FINAL REPORT by the Board on the Unauthorized

Practice of Law, No. UPL 06-06.

_____

**Per Curiam.**

{¶ 1} In June 2006, relator, Disciplinary Counsel, charged respondent, Bruce Andrew Brown, also known as Amir Jamal Tauwab, Bruce Brown, Bruce A. Brown, and B. Andrew Brown, with six counts of unauthorized practice of law. The Board on the Unauthorized Practice of Law concluded that respondent had practiced law in violation of Ohio licensure requirements and recommends that we enjoin respondent from committing further illegal acts, that we impose a civil penalty of $50,000, and that we order respondent to show cause why he should not be held in contempt for violating the injunction we imposed against him in an earlier case in which we found that he had engaged in the unauthorized practice of law, *Disciplinary Counsel v. Brown*, 99 Ohio St.3d 114, 2003-Ohio-2568, 789 N.E.2d 210.

**Background**

{¶ 2} Respondent was admitted to the practice of law in New York in 1985, but was disbarred in 1992. *In re Brown* (1992), 181 A.D.2d 314, 586 N.Y.S.2d 607. Respondent has never been admitted to the practice of law in Ohio.

{¶ 3} In 1992, the Board on the Unauthorized Practice of Law found that respondent had engaged in conduct in Ohio constituting the unauthorized practice

of law. *Disciplinary Counsel v. Brown* (1992), 61 Ohio Misc.2d 792, 584 N.E.2d 1391. Respondent was later convicted of 44 felonies, including grand theft, forgery, uttering, and tampering with records, based on his conduct relating to his unauthorized practice of law. *State v. Brown* (1995), 108 Ohio App.3d 489, 671 N.E.2d 280.

{¶ 4} In 2000, relator filed a complaint with the board, again charging respondent with having engaged in the unauthorized practice of law. *Disciplinary Counsel v. Brown*, 99 Ohio St.3d 114, 2003-Ohio-2568, 789 N.E.2d 210. This court found that respondent had held himself out as a licensed attorney and enjoined him from engaging in further acts of the unauthorized practice of law. Id.

{¶ 5} In addition to the criminal convictions mentioned above, respondent has been convicted several times of felony crimes in Ohio. In 1991, respondent pleaded guilty in Cuyahoga County Common Pleas Court to passing bad checks and forging a power of attorney. In January 2003, respondent pleaded guilty in Cuyahoga County Common Pleas Court to a 21-count indictment: six counts of theft, six counts of false representation as an attorney, seven counts of passing bad checks, one count of forgery, and one count of uttering. In June 2003, respondent pleaded guilty to two counts of forgery in Portage County Common Pleas Court.

{¶ 6} In 2006, relator brought this action, charging that respondent had again engaged in the unauthorized practice of law. At the time of the filing of this action, respondent maintained a place of business known as B. Andrew Brown & Associates, L.L.C., in Cleveland and held himself out as B. Andrew Brown, Esq., on stationery with B. Andrew Brown & Associates on the letterhead.

{¶ 7} The board concluded that respondent had practiced law in violation of Ohio licensure requirements and recommended that we enjoin respondent from committing further illegal acts. We agree that respondent engaged in the

unauthorized practice of law and that an injunction, along with other penalties, is warranted.

**Respondent's Conduct**

*Count One: The Hilliard Matter*

{¶ 8} Georgia Lee Hilliard died on March 18, 2000. Yet respondent held a power of attorney dated July 12, 2005, purporting to appoint respondent as attorney-in-fact for Hilliard for any and all acts relating to specified real property belonging to Hilliard. On July 30, 2005, respondent appeared at the closing for the sale of the property and executed all the closing documents in his capacity as Hilliard's attorney-in-fact. Proceeds from the sale of the property were placed into a U.S. Bank trust account in his name. Respondent later filed an action against U.S. Bank, alleging that the bank had converted the proceeds from the sale of the Hilliard property.

{¶ 9} R.C. 4705.01 provides: "No person shall be permitted to practice as an attorney and counselor at law, or to commence, conduct, or defend any action or proceeding in which the person is not a party concerned * * * unless the person has been admitted to the bar by order of the supreme court in compliance with its prescribed and published rules."

{¶ 10} In his objections, respondent argues that relator failed to prove that he filed the lawsuit on behalf of Hilliard. He argues that he, not Hilliard, was the named party. However, Civ.R. 17 does not permit respondent to file a lawsuit against U.S. Bank for what respondent claims was the "unlawful taking of [Hilliard's] funds." In the U.S. Bank lawsuit, respondent was ostensibly seeking the return of Hilliard's funds on behalf of Hilliard. This lawsuit was unrelated to the real estate transaction for which respondent was purportedly designated attorney- in-fact.

{¶ 11} But even if the lawsuit were related to the real estate transaction, respondent would be in violation of the law because "a power of attorney does not

give a person the right to prepare and file pleadings in court for another." *Cuyahoga Cty. Bar Assn. v. Spurlock,* 96 Ohio St.3d 18, 2002-Ohio-2580, 770 N.E.2d 568, at ¶ 9. This court has previously held that "[w]hen a person not admitted to the bar attempts to represent another in court on the basis of a power of attorney assigning *pro se* rights, he is in violation of [R.C. 4705.01]. A private contract cannot be used to circumvent a statutory prohibition based on public policy." *Disciplinary Counsel v. Coleman* (2000), 88 Ohio St.3d 155, 158, 724 N.E.2d 402. We affirm the board's conclusion that respondent engaged in the unauthorized practice of law by filing the action against U.S. Bank.

*Count Two: The Paoletta Matter*

{¶ 12} In 2005, respondent sent a letter to Cindy Paoletta requesting payment of an alleged debt owed by Paoletta to Raymond P. Buildt, a contractor who had allegedly furnished materials and labor to improve Paoletta's property. Respondent enclosed an affidavit for a mechanic's lien against the property. The letter was written on stationery bearing the names B. Andrew Brown & Associates, L.L.C., and B. Andrew Brown, Esq., on the letterhead.

{¶ 13} Paoletta retained an attorney, who confirmed that the mechanic's lien had been filed with the Cuyahoga County Recorder's Office. The lien contained a legend stating that the document had been prepared by B.A. Brown.

{¶ 14} Paoletta's attorney testified before the board that because the letter from respondent contained the designations "L.L.C." and "Esq.," he had assumed that respondent was an attorney. The attorney engaged in various written and verbal communications with respondent based on this assumption. The attorney later discovered that respondent was not an attorney, and when he confronted respondent, he admitted that he was not an attorney. Soon thereafter, Paoletta's attorney received a letter from respondent enclosing a copy of a satisfaction of mechanic's lien that had been filed and that bore the notation "Prepared by: B. Andrew Brown & Assoc."

{¶ 15} Prior to receiving the satisfaction of mechanic's lien, Paoletta's attorney learned from the Cuyahoga County Prosecutor's Office that respondent was not admitted to practice law in Ohio. At the hearing before the board, respondent submitted into evidence a letter purporting to have been sent by him to Paoletta's attorney on August 15, 2005, which provides: "Be advised that I am not an attorney, practicing law. I am a collection agent." Paoletta's attorney testified that he did not receive that letter in August 2005 and that the first time he saw it was in November 2007, approximately two weeks before the board hearing.

{¶ 16} Respondent argues that he was acting as a "collection agent," not an attorney. However, there is no evidence that respondent was acting as a collection agent in sending the letter to Paoletta. In leading Paoletta and her attorney to believe that he was an attorney, respondent engaged in the unauthorized practice of law. See *Disciplinary Counsel v. Robson*, 116 Ohio St.3d 318, 2007-Ohio-6460, 878 N.E.2d 1042. Also, because "the practice of law includes the preparation of legal documents on another's behalf," *Geauga Cty. Bar Assn. v. Canfield* (2001), 92 Ohio St.3d 15, 748 N.E.2d 23, in preparing the affidavit for a mechanic's lien and the satisfaction of mechanic's lien on behalf of Buildt, respondent engaged in the unauthorized practice of law.

{¶ 17} Finally, we have held that "one who purports to negotiate legal claims on behalf of another and advises persons of their legal rights * * * engages in the practice of law." *Cleveland Bar Assn. v. Henley* (2002), 95 Ohio St.3d 91, 92, 766 N.E.2d 130. Thus, by engaging in negotiations with Paoletta's attorney to settle a legal dispute between Buildt and Paoletta, respondent engaged in the unauthorized practice of law. Id.; see also *Ohio State Bar Assn. v. Kolodner*, 103 Ohio St.3d 504, 2004-Ohio-5581, 817 N.E.2d 25.

*Count Three: The Primous Matter*

{¶ 18} When Rosa Primous, a teacher, applied for a home-equity loan at Key Bank in Cleveland, the bank's branch manager reviewed her credit report and

told her that another person was using her Social Security number. Primous asked the branch manager if he knew a lawyer who could handle the problem, and he recommended respondent and gave her one of respondent's business cards. The card identified respondent as B. Andrew Brown, Esq., and his business as B. Andrew Brown & Associates, L.L.C.

{¶ 19} When Primous met with respondent, she referred to him as a lawyer, and he did not correct her. Primous also paid respondent a $250 "retainer." On stationery bearing the names B. Andrew Brown & Associates, L.L.C., and B. Andrew Brown, Esq., respondent wrote a letter on Primous's behalf to the person believed to be using her Social Security number, stating that respondent had been retained to investigate and resolve the matter. Also using his B. Andrew Brown & Associates, L.L.C./B. Andrew Brown, Esq., stationery, respondent wrote letters to the three major credit-reporting services on Primous's behalf. Primous later tried to contact respondent, but he did not return her calls or any portion of her $250 retainer.

{¶ 20} Respondent contends that he was simply acting as a "credit repair organization" with regard to Primous. However, Section 1679c(a), Title 15, U.S.Code requires that a credit-repair organization provide every consumer with a written statement setting forth the consumer's rights under state and federal law. Respondent offered no evidence that he ever provided such a statement to Primous. Further, federal law requires a contract between the credit-repair organization and the consumer that meets the requirements of Section 1679d(b), Title 15, U.S.Code. There is no evidence of such a contract between respondent and Primous. Finally, respondent never registered as a credit-services organization as required by R.C. 4712.02, nor were his activities permitted under R.C. Chapter 4712.

{¶ 21} Respondent's failure to correct Primous's misunderstanding that he was an attorney led Primous to believe that she was paying an attorney to provide

her with legal services, and therefore his actions with regard to Primous constituted the unauthorized practice of law. See *Disciplinary Counsel v. Robson*, 116 Ohio St.3d 318, 2007-Ohio-6460, 878 N.E.2d 1042. Respondent, in collecting a retainer, reinforced the notion that an attorney-client relationship had been established.

{¶ 22} As we held in *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650, at paragraph one of the syllabus: "The practice of law is not limited to the conduct of cases in court. It embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law." The acts of contacting the person believed to be using Primous's Social Security number and contacting the three credit-reporting agencies — all on Primous's behalf — while holding himself out to Primous to be a lawyer, constituted the unauthorized practice of law.

*Count Four: The Joseph Matter*

{¶ 23} Mohammad Joseph and his cousin contacted respondent and asked him to prepare the necessary documents for establishing a business to be known as King Drive Through, L.L.C. Joseph thought that respondent was an attorney, because his cousin had told him that respondent was an attorney and that respondent had previously represented the cousin. Respondent signed the Organization/Registration of Limited Liability Company form for King Drive Through, L.L.C., accepting his appointment as agent, and B. Andrew Brown & Associates is listed as the address to which requests for copies of company documents should be addressed.

**{¶ 24}** While meeting with respondent to discuss forming a business, Joseph also mentioned to respondent that he had recently been charged with carrying a concealed weapon. Respondent told Joseph that he would represent him on the criminal charge and that he could get the charges dismissed. Joseph paid respondent $1,800 for his services in setting up his business and representing him in the criminal case. Thereafter, respondent failed to appear at three scheduled hearings in the criminal case, despite reassuring Joseph each time that he would be there to represent him. He also failed to file a motion to dismiss, which he told Joseph he had filed. Ultimately, Joseph hired a licensed attorney to represent him.

**{¶ 25}** Respondent told Joseph that he would return the $1,800 Joseph had paid him by depositing the money directly into Joseph's bank account. Respondent wrote a check drawn on an account registered to the Bruce Andrew Brown Group, Ltd., in the amount of $1,800 payable to Joseph. That check was deposited into Joseph's account and bore an indorsement purporting to be Joseph's. But Joseph later testified that he had not indorsed the check. Further, respondent's account had been closed, so the check was not honored. Respondent wrote a second check, this one for $1,850, on the same account. This check also purported to bear Joseph's indorsement, but Joseph testified that he had not signed that check either. The second check was also not honored.

**{¶ 26}** Joseph filed a claim with the Supreme Court of Ohio Clients' Security Fund seeking return of the money he had given respondent. That claim was denied on the grounds that respondent was not an attorney admitted to practice in Ohio. Joseph did not learn that respondent was not an attorney until notified by the Supreme Court Clients' Security Fund.

**{¶ 27}** Respondent contends that B. Andrew Brown & Associates, L.L.C. "is in the business of incorporating and registering business entities." However, in *Miami Cty. Bar Assn. v. Wyandt & Silvers, Inc.*, 107 Ohio St.3d 259, 2005-

8

Ohio-6430, 838 N.E.2d 655, this court held that a nonattorney's advising clients about setting up various businesses and filling out and filing basic forms from the Ohio secretary of state to establish articles of incorporation and appoint a statutory agent constitute the unauthorized practice of law. Thus, respondent engaged in the unauthorized practice of law when he contracted with Joseph to accept compensation to provide legal services to incorporate Joseph's business and then drafted the necessary documents.

{¶ 28} Respondent also engaged in the unauthorized practice of law when he accepted money from Joseph to represent him in his criminal case and gave him legal advice.

*Count Five: The Pierce Matter*

{¶ 29} Reginald Pierce was referred to respondent after asking a local attorney to recommend an attorney to assist him in filing a bankruptcy petition. Upon first meeting Pierce, respondent told him that he needed a lawyer to complete his bankruptcy forms and that respondent would "take care of everything" relative to the bankruptcy. Pierce believed that respondent was an attorney, and respondent never informed Pierce otherwise.

{¶ 30} Respondent filed a Chapter 7 bankruptcy petition for Pierce and designated himself as a bankruptcy-petition preparer. In conjunction with the filing of the bankruptcy petition, respondent also filed a general power of attorney, appointing himself as Pierce's attorney-in-fact. At the unauthorized-practice-of-law hearing, Pierce testified that the signature on the power-of-attorney form was not his.

{¶ 31} Pierce paid respondent $200 to prepare and file the bankruptcy petition, and an additional $209 for filing fees. A bankruptcy-petition preparer is not permitted to collect or receive any payment from the debtor for the court fees in connection with filing the petition. Section 110(g), Title 11, U.S.Code.

{¶ 32} Respondent did not pay the filing fee in full when he filed Pierce's bankruptcy petition. Instead, he filed a request to pay the fee in installments. Respondent converted $109 of the filing fee to his own use.

{¶ 33} The case was assigned to Judge Morgenstern-Clarren, who immediately issued a show-cause order requiring respondent and Pierce to appear and explain why the petition had been filed by a third party and whether any compensation had been paid to respondent for preparing the bankruptcy case. Under bankruptcy law, a bankruptcy-petition preparer cannot be paid by the debtor until the entire filing fee is paid.

{¶ 34} Respondent appeared before Judge Morgenstern-Clarren without Pierce and falsely claimed that he had not yet been paid by him for his services. Respondent never informed Pierce of the judge's order to appear. Judge Morgenstern-Clarren ultimately dismissed Pierce's case because Pierce failed to appear in response to the court's order to show case.

{¶ 35} Unaware that his bankruptcy case had been dismissed, Pierce again consulted respondent when his employer told him that his wages were going to be garnished. Respondent told Pierce that because he had filed bankruptcy, he should not be garnished, and he made several calls to temporarily delay the garnishment. Ultimately, Pierce hired a licensed attorney to file a new bankruptcy petition.

{¶ 36} Respondent argues that at all times he was acting as a nonattorney bankruptcy-petition preparer, not an attorney. Although Section 110, Title 11 of the U.S. Code permits nonattorneys to prepare ordinary petitions for bankruptcy on behalf of others pursuant to specific guidelines, *Cleveland Bar Assn. v. Boyd*, 112 Ohio St.3d 331, 2006-Ohio-6590, 859 N.E.2d 930, ¶ 6, respondent exceeded the statutory guidelines for bankruptcy-petition preparers because he began to act in the capacity of a legal representative. Respondent ultimately failed in his effort to represent Pierce before the bankruptcy court. In failing to restrict his activities

to those permitted by Section 110, Title 11, U.S.Code, the respondent also caused Pierce's case to be dismissed.

**{¶ 37}** In violation of Section 110(b)(2)(A), Title 11, U.S.Code, respondent never explained to Pierce that he was acting as a nonattorney bankruptcy-petition preparer. In fact, the evidence establishes that respondent told Pierce that Pierce needed a *lawyer* to complete his bankruptcy forms and that Pierce believed respondent was a lawyer. In violation of Section 110(b)(2)(A), Title 11, U.S.Code, respondent never *explained* to Pierce that he was acting as a nonattorney bankruptcy-petition preparer. Thus, by simply signing his name on the petition as a nonattorney bankruptcy-petition preparer, respondent did not fulfill the requirements of the statute.

**{¶ 38}** Believing that respondent was an attorney, Pierce gave respondent information regarding his debts, and in violation of Section 110, Title 11, U.S.Code, respondent completed the bankruptcy schedules. In violation of Section 110(g), Title 11, U.S.Code, respondent collected court fees from Pierce. In violation of Section 110(h)(2), Title 11, U.S.Code, respondent failed to file a declaration disclosing any fee received from Pierce within 12 months prior to the filing of the case.

**{¶ 39}** In summary, respondent failed to inform Pierce that he was not an attorney, failed to file a compensation-disclosure form, received funds from Pierce before he paid the entire filing fee, filed a forged general power of attorney in an attempt to elevate his level of representation, acted on Pierce's behalf to temporarily stop a garnishment, and advised Pierce, incorrectly, of the status of his bankruptcy after the case had been dismissed and Pierce's wages were garnished. In his interactions with Pierce, respondent repeatedly overstepped the activities permitted by Section 110, Title 11, U.S.Code and engaged in the unauthorized practice of law.

*Count Six: The Delaney Matter*

{¶ 40} There was an additional count that was dismissed by the panel due to insufficient evidence.

## Review

{¶ 41} Section 2(B)(1)(g), Article IV of the Ohio Constitution confers on this court original jurisdiction over all matters related to the practice of law, including regulating the unauthorized practice of law. The unauthorized practice of law consists of rendering legal services for others by anyone not licensed or registered to practice law in Ohio. Gov.Bar R. VII(2). Advising others of their legal rights and responsibilities is the practice of law, as is the preparation of legal pleadings and other legal papers without the supervision of an attorney licensed in Ohio. *Cleveland Bar Assn. v. McKissic*, 106 Ohio St.3d 106, 2005-Ohio-3954, 832 N.E.2d 49, ¶ 6.

{¶ 42} "An allegation that an individual or entity has engaged in the unauthorized practice of law must be supported by either an admission or other evidence of the specific act or acts upon which the allegation is based." *Cleveland Bar Assn. v. CompManagement, Inc.*, 111 Ohio St.3d 444, 2006-Ohio-6108, 857 N.E.2d 95, paragraph one of the syllabus. We find that the record provides ample evidence of the specific acts upon which to base the allegations of unauthorized practice. We adopt the board's findings and conclusions.

## Sanction

{¶ 43} In 2003, when considering prior charges of unauthorized practice of law against respondent, this court declined to enjoin respondent from using "J.D." or "Esq." in connection with his name. *Disciplinary Counsel v. Brown*, 99 Ohio St.3d 114, 2003-Ohio-2568, 789 N.E.2d 210, ¶ 12, fn. 1. However, we expressly admonished respondent that he risked punishment for contempt for continuing to engage in the unauthorized practice of law. Id. Clearly, respondent has not heeded this admonishment, nor has he heeded this court's injunction prohibiting him from engaging in the unauthorized practice of law.

**{¶ 44}** Respondent's use of the term "Esq." in connection with his name on his office stationery and business cards is misleading. His use of the term was one of the factors that induced a federal judge, a practicing lawyer, a school teacher, and a city prosecutor into believing that he was an attorney. As the board concluded, the record in this case included substantial credible evidence that respondent's use of the term "Esq." induced clients to believe that he was a lawyer, a misunderstanding that he was aware of and failed to correct.

**{¶ 45}** Accordingly, having found that respondent again engaged in the unauthorized practice of law by giving legal advice and assisting others in preparing legal pleadings and other documents, we accept the board's recommendation that we issue an injunction prohibiting respondent from performing acts constituting the practice of law. We further issue an order prohibiting respondent from using the terms "Esq.," "Esquire," "J.D.," or "Juris Doctor" in conjunction with his name or business name.

**{¶ 46}** Gov.Bar R. VII(8)(B) and UPL Reg. 400 permit civil penalties in matters such as this. We adopt the board's recommendation and impose a civil penalty of $10,000 for each of Counts One, Two, Three, Four, and Five of the complaint, for a total penalty of $50,000. The board supports its recommendation by stating, "Respondent's conduct in this case demonstrated a degree of flagrancy not presented before to this Board. Despite being before the board on three separate occasions since 1992 based on very similar allegations, he has continued to engage in a pattern of deception and chicanery in a deliberate and unlawful attempt to engage in the practice of law. Gov.Bar R. VII, §8(B)(3)."

**{¶ 47}** We agree with the board's assessment. Respondent has previously engaged in and been ordered by this court to cease engaging in the unauthorized practice of law. UPL Reg. 400(F)(3)(a) and (b). His conduct resulted in harm to several persons who believed he was an attorney and relied upon that belief to their detriment. Gov.Bar R. VII(8)(B)(4). Moreover, in each count, respondent

benefited financially from the services he performed or promised to perform. UPL Reg. 400(F)(3)(d). Finally, he engaged in conduct that allowed others to mistakenly believe that he was admitted to practice law in the state of Ohio. UPL Reg. 400(F)(3)(g).

{¶ 48} The board further found that respondent's proven actions under Counts One, Two, Three, Four, and Five of the complaint constitute violations of this court's injunction in *Disciplinary Counsel v. Brown*, 99 Ohio St.3d 114, 2003-Ohio-2568, 789 N.E.2d 210. Accordingly, upon the filing of a motion by relator in *Disciplinary Counsel v. Brown*, 99 Ohio St.3d 114, 2003-Ohio-2568, 789 N.E.2d 210, case No. 2002-1380, respondent will be ordered to appear and show cause why he should not be held in contempt of our order issued on May 28, 2003.

{¶ 49} All expenses and costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator.

Bruce A. Brown, pro se.

_____