**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as Disciplinary Counsel *v. Hernandez,* Slip Opinion No. 2014-Ohio-5486.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-5486

DISCIPLINARY COUNSEL *v.* HERNANDEZ.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Hernandez,* Slip Opinion No. 2014-Ohio-5486.]**

*Unauthorized practice of law—Advertising oneself as a lawyer and giving legal advice for a fee—injunction and civil penalty.*

(No. 2014-0517—Submitted May 28, 2014—Decided December 23, 2014.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the Supreme Court, No. UPL 13-02.

_____

**Per Curiam.**

{¶ 1} Relator, disciplinary counsel, charged Mary E. Hernandez of Cincinnati, Ohio, with the unauthorized practice of law for distributing business cards representing herself as an attorney practicing in the areas of criminal, family, juvenile, and immigration law, and for preparing documents and correspondence on behalf of Miguel Galan-Rubio regarding immigration matters before the Department of Homeland Security, United States Citizenship and

Immigration Services ("USCIS"), and the Executive Office for Immigration Review Cleveland Immigration Court ("Immigration Court"). Hernandez is not admitted to the practice of law in Ohio or any other state.

{¶ 2} Hernandez received relator's initial letter of inquiry and left a voicemail message for relator the following day, stating that she was experiencing several health problems and that her daughter would call at a later time to discuss the letter of inquiry in more detail. And after receiving a hand-delivered copy of relator's draft complaint, she called relator's office to deny most of the allegations in the complaint and attempt to explain her conduct. Relator advised her to respond to the allegations through proper channels—by providing a response to the draft complaint and filing an answer to the formal complaint. Although Hernandez was served with the formal complaint by certified mail, she never filed an answer. Consequently, relator moved for an entry of default.

{¶ 3} Based on the affidavits and sworn or certified documents submitted with relator's motion, a three-member panel of the Board on the Unauthorized Practice of Law issued findings of fact and conclusions of law and determined that Hernandez had engaged in the unauthorized practice of law. The panel recommended that we enjoin Hernandez from engaging in further acts of the unauthorized practice of law and assess a $15,000 civil penalty.

{¶ 4} The board adopted the panel's findings of fact with some minor modifications and, in addition to the sanctions recommended by the panel, recommended that we require Hernandez to make restitution to Galan-Rubio and to the Department of Homeland Security, Office of Inspector General.

{¶ 5} We agree that Hernandez engaged in the unauthorized practice of law and adopt the board's recommendation that she be enjoined from engaging in further acts of the unauthorized practice of law and that a civil penalty of $15,000 be assessed against her.

**Hernandez's Unauthorized Practice of Law**

{¶ 6} The sworn affidavits submitted with relator's motion for default demonstrate that in late January or early February 2011, Miguel Galan-Rubio picked up Hernandez's business card at a local Hispanic grocery store. Bearing her name and "Hernandez Law," the card indicated that she practiced criminal, family, juvenile, and immigration law and that she spoke Spanish. Hernandez, however, is not licensed to practice law in Ohio or any other state.

{¶ 7} Galan-Rubio has a family and three young children who are United States citizens, but he faces possible deportation because he illegally entered the United States from Mexico in or about 1999. He met with Hernandez in late January or early February 2011 to discuss his pending immigration matters, including a March 16, 2011 hearing before the United States Immigration Court in Cleveland. She told Galan-Rubio that she had a personal relationship with a high-level employee with United States Citizenship and Immigration Service ("USCIS") who would assist her with his case for a fee and that her personal and direct contacts with the immigration judge presiding over his case, the Ohio governor, and an Ohio senator would also help.

{¶ 8} Over the course of several weeks, Galan-Rubio spoke regularly with Hernandez by phone. She advised him that she had spoken to the judge and her contact at USCIS and everything was "fine" and told him that he did not need to appear for his March 16, 2011 hearing. She asked him to pay certain fees, a portion of which she claimed would be forwarded to the judge and her USCIS contact for their services.

{¶ 9} Hernandez also met with Galan-Rubio in person on several occasions and presented him with several documents pertaining to his case including (1) an I-485 Application to Register Permanent Residence or Adjust Status that she had prepared on his behalf, (2) several letters that she had prepared and claimed to have sent to the judge and her USCIS contact, (2) a forged letter

purporting to be from the judge acknowledging receipt of Galan-Rubio's paperwork, and (3) a letter detailing the breakdown of her fees. Some of these documents identify Hernandez as Galan-Rubio's lawyer.

{¶ 10} By the end of February 2011, Galan-Rubio had become suspicious of Hernandez, in part because she could not provide him with proof that he was not required to attend his March 16, 2011 immigration hearing or that she was, in fact, an attorney. After he called the immigration court directly and learned that, contrary to Hernandez's representations, his hearing had not been canceled, he retained attorney Marilyn Zayas-Davis to represent him in his immigration matters.

{¶ 11} Not only did attorney Zayas-Davis handle Galan-Rubio's immigration matter, but she also notified numerous agencies, including the Department of Homeland Security, Office of Inspector General ("OIG") of Hernandez's actions. The OIG initiated an investigation, focusing on whether the immigration judge and Hernandez's purported contact at the USCIS had accepted bribes from Hernandez in exchange for taking favorable actions in Galen-Rubio's case. As part of that investigation, and with Galen-Rubio's consent, the OIG monitored his communication with Hernandez.

{¶ 12} During a monitored March 24, 2011 telephone call, Hernandez told Galen-Rubio that she had completed all of the necessary paperwork in his case and that she had spoken with the judge about the proceedings on several occasions. She asked Galen-Rubio for an additional $600, which she stated was for the judge to "finish up the case."

{¶ 13} At a March 30, 2011 meeting, monitored by the OIG, Galan-Rubio gave Hernandez $600 provided to him by the OIG. Hernandez stated that the money was for the judge assigned to his case and gave Galan-Rubio a letter, purporting to be from the judge, which stated that the judge had received $1,550 from Hernandez. And in an April 6, 2011 monitored telephone call, Hernandez

4

once again claimed to have spoken with the judge, advised Galan-Rubio that he did not have to attend any court proceedings and instructed him not to call the court directly, because the judge had already taken care of everything. She also requested more money from Galen-Rubio for the services she had performed on his behalf. Galan-Rubio did not speak to Hernandez after that telephone conversation, but she wrote to him on at least two occasions demanding payment of $2,500 for her services. She threatened to contact immigration officials or "file papers at the courthouse against [him] for nonpayment," which she asserted would lead to his deportation—and which she claimed she could not stop a second time.

{¶ 14} After interviewing the immigration judge and the USCIS employee implicated by Hernandez, the OIG determined that they had not engaged in any misconduct. And although the OIG reported Hernandez's conduct to federal and local prosecutors, it appears that both entities declined to prosecute her.

{¶ 15} Because Hernandez held herself out as an attorney on the business cards she used to advertise her legal services, in her conversations with Galan-Rubio, and in the documents and correspondence that she had prepared for the Immigration Court on Galan-Rubio's behalf, the board determined that Hernandez had engaged in the unauthorized practice of law.

{¶ 16} The unauthorized practice of law is defined as "[t]he rendering of legal services for another by any person not admitted to practice in Ohio." Gov.Bar R. VII(2)(A)(1); *Cleveland Bar Assn. v. Pearlman*, 106 Ohio St.3d 136, 2005-Ohio-4107, 832 N.E.2d 1193, ¶ 7. The unauthorized practice of law includes, but is not limited to, the drafting and preparation of pleadings filed in the courts of Ohio and includes the preparation of legal documents and instruments upon which legal rights are secured and advanced. *Akron Bar Assn. v. Greene*, 77 Ohio St.3d 279, 280, 673 N.E.2d 1307 (1997); *Land Title Abstract & Trust Co. v. Dworken*, 129 Ohio St. 23, 193 N.E. 650 (1934), syllabus. We

have also held that nonlawyers engage in the unauthorized practice of law when they accept legal fees for providing legal representation and advice. *Disciplinary Counsel v. Brown*, 121 Ohio St.3d 423, 2009-Ohio-1152, 905 N.E.2d 163, ¶ 28.

{¶ 17} A person who is not licensed to practice law in this state is prohibited from holding himself or herself out as an attorney at law, by using the words "lawyer," "attorney at law," "counselor at law," "law," "law office," or equivalent words along with the person's own name, or any sign, card, letterhead, or other document when the evident purpose is to induce others to believe that the person is an attorney. Gov.Bar R. VII(2)(A)(4); R.C. 4705.07(A)(1) and (B)(1). Moreover, a nonlawyer is also prohibited from representing orally or in writing, directly or indirectly, that he or she is authorized to practice law. R.C. 4705.07(A)(2).

{¶ 18} Hernandez did not possesses the requisite qualifications to practice law in this state, but a preponderance of the evidence shows that she advertised legal services by distributing business cards for "Hernandez Law," bearing her name and the words "Criminal, Family, Juvenile, and Immigration," suggesting that she had skills or knowledge regarding those areas of the law. She met with Galan-Rubio, told him—both orally and in writing—that she was a lawyer, and advised him regarding his pending immigration matters. Although we recognize that the Code of Federal Regulations permits nonlawyers to represent parties to immigration proceedings in certain, limited circumstances, *see* 8 C.F.R. 1292.1, those circumstances are not relevant here, because Hernandez falsely held herself out as a lawyer throughout her representation of Galan-Rubio.

{¶ 19} Accordingly, we accept the board's findings that Hernandez has engaged in the unauthorized practice of law.

**Sanction**

{¶ 20} Because we find that Hernandez engaged in the unauthorized practice of law, we adopt the board's recommendation that we enjoin her from

6

engaging in further acts of the unauthorized practice of law. Pursuant to Gov.Bar R. VII(19)(D)(1)(c), we may also impose civil penalties in an amount greater or less than the amount recommended by the board, but not to exceed $10,000 per offense. In determining whether to impose a civil penalty, Gov.Bar R. VII(8)(B) directs us to consider

> (1) The degree of cooperation provided by the respondent in the investigation;
> (2) The number of occasions that unauthorized practice of law was committed;
> (3) The flagrancy of the violation;
> (4) Harm to third parties arising from the offense;
> (5) Any other relevant factors.

**{¶ 21}** Hernandez did not cooperate during relator's investigation and did not answer the formal complaint filed against her. The board found that she had engaged in two instances of the unauthorized practice of law—first by using business cards to advertise her legal services and then by advising Galan-Rubio on his immigration matters and preparing documents and correspondence on his behalf.

**{¶ 22}** With regard to the flagrancy of the violations, the board found that despite the fact that she is not licensed to practice law in any state, Hernandez engaged in a pattern of deceit. She falsely claimed to have personal relationships with real federal employees, forged letters that purported to be from the immigration judge presiding over Galan-Rubio's case, and alleged that they were her coconspirators, willing to engage in ex parte communications and accept bribes in exchange for a favorable outcome in a pending case. As a result of her

actions, the federal employees she identified suffered damage to their professional reputations and became the subjects of an investigation conducted by the OIG.

**{¶ 23}** The board found that Hernandez's fraud was particularly heinous because, in addition to affecting official government proceedings, it also preyed on vulnerable, unwitting victims who are unfamiliar with the immigration process and who may be accustomed to the practice of bribing government officials to obtain favorable results in their countries of origin. The consequences of such schemes are enormous. Here, not only did Hernandez take $2,650 from Galan-Rubio ($2,050 of his own money plus $600 provided by the OIG as part of its investigation), but Galan-Rubio's attorney averred that if her client had heeded Hernandez's advice and failed to appear at his March 16, 2011 immigration hearing, the immigration court would have issued an order for him to be "removed in absentia." And if deported pursuant to that order, Galan-Rubio would have had to wait ten years before he could return to the United States. Because Hernandez failed to cooperate in the proceedings, there is no way to know how many others may have fallen victim to her scheme.

**{¶ 24}** Therefore, we agree with the board's recommendation that we enjoin Hernandez from engaging in further acts of the unauthorized practice of law, impose the maximum $10,000 civil penalty for Hernandez's acts against Galan-Rubio and an additional $5,000 civil penalty for her distribution of business cards to advertise her legal services. *See Cleveland Metro. Bar Assn. v. McGinnis*, 137 Ohio St.3d 168, 2013-Ohio-4581, 998 N.E.2d 474 (imposing a $6,000 civil penalty against a respondent who posted and circulated fliers advertising her legal services and prepared two legal documents on behalf of the defendant in an eviction action). Although we do not order restitution at this time, we note that a victim of the unauthorized practice of law can seek redress by suing an unlicensed practitioner directly to recover fees and other damages pursuant to R.C. 4705.07(C)(2).

8

**{¶ 25}** Accordingly, we enjoin Hernandez from engaging in any further acts that constitute the unauthorized practice of law. We also impose a civil penalty of $10,000 against Hernandez for her representation of Galan-Rubio and $5,000 for her advertisement of legal services, for a total of $15,000. Costs and expenses are taxed to Hernandez.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Scott J. Drexel, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

_____