# IN THE MATTER OF THE PETITION OF THE VIRGIN ISLANDS BAR ASSOCIATION COMMITTEE ON THE UNAUTHORIZED PRACTICE OF LAW RE: WILSON J. CAMPBELL

S. Ct. Misc. No. 2012-0016

Supreme Court of the Virgin Islands

September 16, 2013

704

K. GLENDA CAMERON, ESQ., Law Offices of K.G. Cameron, *Attorney for Petitioner Virgin Islands Bar Association Committee on the Unauthorized Practice of Law.*

WILSON J. CAMPBELL, Newark, New Jersey, *Pro se.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 16, 2013)

PER CURIAM. This matter comes before the Court pursuant to a petition filed by the Unauthorized Practice of Law Committee of the Virgin Islands Bar Association ("UPLC"), in which it alleges that Wilson J. Campbell, a New Jersey attorney, has engaged in the unauthorized

706

practice of law while employed with the Virgin Islands Department of Justice. For the reasons that follow, we grant the petition, as modified.[1]

## I. BACKGROUND

The Department of Justice initially employed Campbell as an Assistant Attorney General in its St. Croix office beginning in October 2004. Although not a regular member of the Virgin Islands Bar, Campbell practiced as a specially admitted attorney pursuant to the former Superior Court Rule 302[2] until he separated from the Department of Justice and returned to New Jersey in September 2006, where he served as a part-time municipal judge.

Eventually, Campbell received an offer to rejoin the Department of Justice as an Assistant Attorney General who would also serve as "Chief of the Criminal Division" on St. Thomas. On July 30, 2009, the Department of Justice moved this Court for Campbell's special admission. However, unlike former Superior Court Rule 302, Supreme Court Rule 202 requires an applicant for special admission to establish, by clear and convincing evidence, the good moral character necessary to practice law in the Virgin Islands. Campbell disclosed to the Committee of Bar Examiners ("CBE") that a complaint had been filed against him by New Jersey's Advisory Committee on Judicial Conduct, which alleged that Campbell violated that court's rules on judicial conduct and the judicial canon of ethics by failing to report an intimate relationship with a bailiff to his supervisors. As a result of the then-pending New Jersey judicial discipline proceedings, the CBE temporarily stayed scheduling a formal character and fitness hearing. *See In re Application of Campbell*, S. Ct. BA. No. 2009-0230, 2011 V.I. Supreme LEXIS 28, *1-4 & n.2 (V.I. Mar. 3, 2011) (unpublished).

---

[1] Originally, the UPLC's petition also charged Attorney General Vincent F. Frazer, Esq., with facilitating Campbell's unauthorized practice of law. However, this Court, in an October 30, 2012 Order, dismissed that portion of the petition without prejudice and referred the matter to the Ethics and Grievance Committee of the Virgin Islands Bar Association ("EGC") for further proceedings, consistent with our decision in *In re Rogers*, 57 V.I. 553 (V.I. 2012).

[2] "After 1991, but prior to establishment of the Supreme Court in 2007, the Superior Court, as the highest non-federal local court of the Virgin Islands, governed admissions to the Virgin Islands Bar." *In re Application of Payton*, S.Ct. BA No. 2007-0146, 2009 V.I. Supreme LEXIS 17, *2 (V.I. Mar. 20, 2009) (unpublished) (citing *In re Application of Moorhead*, 27 V.I. 74, 93 (V.I. Super. Ct. 1992)). "This Court assumed jurisdiction over bar admissions matters in 2007." *Id.* (citing *In re Application of Coggin*, 49 V.I. 432, 436 (V.I. 2008)).

Campbell commenced his employment with the Department of Justice in October 2009. On May 28, 2010, the UPLC received a complaint from Ernest Bason, an Assistant Attorney General assigned to the Criminal Division, alleging that Campbell had engaged in the unauthorized practice of law during his tenure. On June 2, 2010, the UPLC received a second complaint against Campbell, filed by Eugene Irish, the Vice President of the United Industrial Workers Union — the organization representing a bargaining unit containing most of the Assistant Attorneys General — which set forth largely the same allegations as those of Bason. The UPLC, in letters dated June 1, 2010, and June 4, 2010, provided Campbell with notice of the complaints, and requested an answer. Campbell responded to the charges in a June 7, 2010 letter, and on June 25, 2010, the UPLC elected to initiate a formal investigation.

Eventually, Campbell requested that the CBE schedule a character and fitness hearing notwithstanding the pendency of the New Jersey proceedings. Although the CBE held a hearing on January 28, 2011, it conducted no inquiry into the unauthorized practice of law allegations. While the New Jersey Supreme Court subsequently issued a decision publicly reprimanding Campbell for violating Canons 1 and 2A of New Jersey's Code of Judicial Conduct, a majority of the CBE agreed to recommend Campbell's admission because the public reprimand did not adversely affect Campbell's right to practice law in New Jersey and the underlying conduct did not reflect that he lacked good moral character. *Campbell*, 2011 V.I. Supreme LEXIS 28 at *4.

This Court, in its March 3, 2011 Opinion, agreed that the New Jersey Supreme Court's public reprimand should not preclude Campbell's special admission on character and fitness grounds, but declined to adopt the ultimate recommendation to grant the motion for special admission because the CBE failed to conduct a complete inquiry into Campbell's moral character. *Id.* at *6. Specifically, this Court found that the CBE and the UPLC possessed concurrent jurisdiction to investigate the unauthorized practice of law allegations. *Id.* at *13 (quoting *In re Application of Coggin*, 49 V.I. 432, 438 (V.I. 2008)). Accordingly, this Court remanded the matter to the CBE for further investigation. *Id.* at *13.

Since the UPLC had already begun its formal investigation, the CBE stayed its inquiry pending the outcome of the UPLC proceedings. However, in August 2011, Campbell resigned from the Department of Justice, which shortly thereafter moved to withdraw its application for his

special admission. Once this Court granted that motion, any further character and fitness investigation by the CBE became moot, leaving the UPLC as the sole entity investigating the unauthorized practice of law allegations.

The UPLC completed its investigation and filed a report with the Board of Governors of the Virgin Islands Bar Association on June 8, 2012, which concluded that Campbell engaged in the unauthorized practice of law at various times between October 2009 and August 2011. The Board of Governors approved the report on July 10, 2012, and the UPLC filed its petition with this Court shortly thereafter. After docketing the UPLC's petition, this Court established deadlines for briefing and transmission of the record. Now that this Court is in receipt of Campbell's response and the record, this matter is ripe for decision.

## II. JURISDICTION

This Court possesses, pursuant to both its statutory and inherent authority, the exclusive jurisdiction to regulate the practice of law in the Virgin Islands. 4 V.I.C. § 32(e); *In re Rogers*, 56 V.I. 618, 623 (V.I. 2012). As a result, this Court has also been vested with jurisdiction to adjudicate actions alleging that an individual has engaged in the unauthorized practice of law, including granting injunctive relief and imposing monetary fines. 4 V.I.C. § 443(b); *see also In re Rogers*, 57 V.I. 553, 558 (V.I. 2012).[3]

## III. DISCUSSION

█ In his response, Campbell primarily argues[4] that the UPLC incorrectly applied section 443 of title 4 to the exclusion of the American

---

[3] Although title 4, section 443(b) provides for "an action for injunctive relief in the District Court of the Virgin Islands," all references to the District Court in the Virgin Islands Code enacted prior to the subsequent reduction in the District Court's jurisdiction over purely local matters have been implicitly repealed, and thus section 443 authorizes the Virgin Islands Bar Association to file an unauthorized practice of law complaint with this Court. *See In re Rogers*, 57 V.I. at 558.

[4] In his response to the UPLC's petition, Campbell also alleges that his special admission never expired when his initial employment with the Department of Justice terminated in September 2006, and that he therefore remained continuously specially admitted from October 2004 through August 2011. However, this Court previously rejected this argument on the merits in a May 20, 2011 Order entered in *In re Application of Campbell*, S. Ct. BA No. 2009-0230, and neither Campbell nor the Department of Justice ever sought certiorari review of our decision with the United States Court of Appeals for the Third Circuit. We

Bar Association's Model Rules of Professional Conduct. As to the merits, Campbell declines to address the claims against him, choosing to "leave[] the [UPLC] to its proofs." (Resp. 2.) Likewise, Campbell has not briefed this Court on the issue of what remedy to grant in the event we agree with the UPLC, other than a general request for leniency. We address each issue in turn.

### A. Title 4, Section 443 Governs Unauthorized Practice of Law in the Virgin Islands

This Court, in its March 3, 2011 Opinion declining to accept the CBE's recommendation to specially admit Campbell, held that title 4, section 443 of the Virgin Islands Code prohibits the unauthorized practice of law in the Virgin Islands. *Campbell*, 2011 V.I. Supreme LEXIS 28 at *3. This statute reads, in pertinent part, as follows:

> Except as otherwise provided by law or rule of court, and excepting court personnel acting in the performance of their court duties, the unauthorized practice of law shall be deemed to mean the doing of any act by a person who is not a member in good standing of the Virgin Islands Bar Association for another person usually done by attorneys-at-law in the course of their profession, and shall include but not be limited to:
>
> the appearance, acting as the attorney-at-law, or representative of another person, firm or corporation, before any court, referee, department, commission, board, judicial person or body authorized or constituted by law to determine any question of law or fact or to exercise any judicial power, or the preparation and/or filing of pleadings or other legal papers incident to any action or other proceeding of any kind before or to be brought before the same.

4 V.I.C. § 443(a) (emphasis added). Notwithstanding our explicit invocation of section 443, Campbell argues, for several reasons, that section 443 is inapplicable. We address each argument in turn.

---

recognize that, notwithstanding *res judicata*, collateral estoppel, law of the case, and similar doctrines, we have permitted, in very limited instances, re-litigation in this Court of bar admissions decisions previously rendered by the Superior Court. *See Payton*, 2009 V.I. Supreme LEXIS 17 at *1. Yet it should go without saying that this narrow exception is wholly inapplicable when the adverse prior decision was rendered by *this* Court. Accordingly, we hold that Campbell is barred from collaterally attacking the May 20, 2011 Order in this proceeding.

### 1. *Relationship Between Supreme Court Rule 203 and Section 443*

██ First, Campbell argues that the Model Rules of Professional Conduct, which Campbell states this Court has "adopted verbatim," (Resp. 12), apply to the exclusion of section 443.[5] Since section 443, by its own terms, provides that this Court may, through court rule, modify the statutory definition of unauthorized practice of law, Campbell is correct that rules adopted by this Court may take precedence over section 443. Campbell, however, is incorrect that this Court has adopted the Model Rules for all purposes. Supreme Court Rule 203 provides, in pertinent part, as follows:

> The Supreme Court, in furtherance of its inherent and statutory powers and responsibility *to supervise the conduct of all attorneys who are admitted to practice before it*, hereby adopts the ABA's Rules of Professional Conduct and Rules of Disciplinary Enforcement, *superseding all of its other rules pertaining to disciplinary enforcement heretofore promulgated.*

V.I.S. CT. R. 203(a) (emphases added). By its own terms, Rule 203 establishes that the Model Rules govern the conduct of individuals who have actually been admitted to the Virgin Islands Bar, and makes no reference to extending the Model Rules to govern the conduct of nonmembers such as Campbell.[6] More importantly, Rule 203 expressly states that the Model

---

[5] Campbell also argues that the ABA's "Model Rule on Practice Pending Admission," adopted in August 2012, fully authorized all of the conduct described in the UPLC's petition. Pursuant to this rule, "[a] lawyer currently holding an active license to practice law in another U.S. jurisdiction who has been engaged in the active practice of law for three of the last five years, may provide legal services in this jurisdiction through an office or other systematic and continuous presence for no more than [365] days." However, this rule — in addition to never being adopted by this Court — was promulgated by the ABA well after all of the events that were the subject of the UPLC's inquiry concluded, and thus Campbell could not have relied on it. Moreover, the record reflects that Campbell maintained a systematic and continuous presence in the Virgin Islands that exceeded 365 days, and thus he would not be protected by the "Model Rule on Practice Pending Admission" even if that rule had been adopted by this Court.

[6] Of course, this Court considers the ABA Model Rules in assessing the conduct of applicants to the Virgin Islands Bar. However, "[w]e turn to the ABA Rules not because Virgin Islands ethical rules actually governed [an applicant's] conduct . . . but because the ABA Rules 'guide[]' us in our inquiry as to whether [an applicant] is fit to practice law in our community." *In re Application of Shea*, 59 V.I. 552, 558 (V.I. 2013)

Rules only supersede previously-promulgated *court rules* "pertaining to disciplinary enforcement," and does not purport to modify the *statutory* definition of unauthorized practice of law found in section 443. Thus, the UPLC committed no error when it identified section 443 as the applicable legal authority.

### 2. Section 443 and the Powers of the Attorney General

Campbell also correctly notes that the phrase "[e]xcept as otherwise provided by law" in section 443(a) authorizes other statutory exceptions to the definition of unauthorized practice of law. Since section 113(b) of title 3 of the Virgin Islands Code provides that "[a]ny Assistant Attorneys General appointed under [section 113(a)] shall perform such duties as the Attorney General prescribes," and section 112(c) of title 3 states that the Department of Justice "shall be administered under the supervision and direction of the Attorney General," Campbell argues that all Assistant Attorneys General are, in effect, supervised by the Attorney General, who is statutorily permitted to delegate whatever duties to them that he sees fit.

We disagree. While Campbell is correct that the Attorney General serves as the head of the Department of Justice and is permitted to delegate duties to Assistant Attorneys General, authorization to practice law is a prerequisite to performing the duties of an Assistant *Attorney* General. *See People v. Murrell*, 56 V.I. 796, 804 (V.I. 2012) ("an attorney general . . . may delegate prosecutorial duties to assistants *authorized to practice law*") (collecting cases) (emphasis added); 4 V.I.C. § 117 (prohibiting Assistant Attorneys General from engaging in the private practice of law). Moreover, although sections 112 and 113 grant the Attorney General the authority to delegate duties to Assistant Attorneys General, these provisions do not authorize the Attorney General to order Assistant Attorneys General to commit illegal acts. Importantly, section 114 of title 3 provides that any rule, regulation, or other practice employed by the Attorney General with respect to the administration of the Department of Justice and its personnel may not be "inconsistent with law or other regulations authorized by law." 3 V.I.C. § 114(a)(14). Not only does section 443 prohibit the unauthorized practice of law, but

---

(quoting *Coggin*, 49 V.I. at 436). For this reason, certain portions of the ABA Rules — such as the choice of law provisions found in ABA Model Rule 8.5 — do not apply to applicants to the Virgin Islands Bar, even though they apply to Virgin Islands lawyers. *Id.*

Supreme Court Rules 201 and 202 — which constitute "other regulations authorized by law" by virtue of this Court's statutory and inherent authority to regulate the practice of law — establish two classes of Virgin Islands Bar Association membership to allow individuals licensed to practice law in other jurisdictions to practice law in the Virgin Islands under the supervision of the Attorney General without sitting for the bar exam: *pro hac vice* admission (for up to three causes), and special admission (unlimited causes for a period not to exceed three years). Thus, the Attorney General's statutorily-mandated supervision of Assistant Attorneys General does not permit an Assistant Attorney General to practice law without obtaining Virgin Islands Bar admission.

### 3. *Constitutionality of Section 443*

Campbell also challenges the constitutionality of section 443 on the grounds that the enactment is vague to such an extent that enforcing it would violate his due process rights under the Fourteenth Amendment of the United States Constitution.[7] According to Campbell, "[t]he language contained in Section 443 is vague in its terms as it provides no definition for 'the doing of any act' or the definition of such 'acts' that are 'usually done by attorneys-at-law in the course of their profession.' " (Resp. 9.) Campbell further alleges that the statute is overbroad in "that attorneys perform 'acts' that are performed by non-lawyers which may include interviewing witnesses, fact investigation and fact analysis regarding legal actions or proceedings," which "are performed by law enforcement personnel, private investigators, experts and lawyers alike." (*Id.*) Thus, Campbell has brought both facial and as-applied challenges to section 443.

██ ██ For Campbell to succeed in his facial challenge, he must prove that vagueness and imprecision so heavily permeate the statute that it is incomprehensible and vague in all of its applications. *See In re Discipline*

---

[7] The Due Process Clause of the Fourteenth Amendment is applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act. *See* The Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86 (1995) (preceding V.I. CODE ANN. tit. 1) ("The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands . . . the second sentence of section 1 of the fourteenth amendment. . . ."). *Accord, Richards v. People*, 53 V.I. 379, 384 n.2 (V.I. 2010); *In re Kendall*, 53 V.I. 459, 463 n.7 (V.I. 2010).

*of Lerner*, 124 Nev. 1232, 197 P.3d 1067, 1076-77 (2008) ("To succeed on a facial challenge for vagueness, the complainant must demonstrate that the law is impermissibly vague in all of its applications. A complainant who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.") (internal quotation marks omitted). While Campbell is correct that section 443 does not delineate every single instance of prohibited conduct, the statute unquestionably provides specific examples of what constitutes the unauthorized practice of law, including, "acting as the attorney-at-law, or representative of another person, firm or corporation, before any court" and "the preparation and/or filing of pleadings or other legal papers incident to any action or other proceeding of any kind before or to be brought before the same." Since the statute is not incomprehensible in all of its applications, Campbell's facial challenge must fail. *See People v. Shell*, 148 P.3d 162, 172-73 (Colo. 2006) (rejecting facial challenge to unauthorized practice of law statute because prohibitions on "drafting documents and pleadings," "giving advice with respect to the law," and "presenting cases before courts" were sufficiently clear to provide notice to person of common intelligence).

■■ For similar reasons, we reject Campbell's as-applied challenge. None of the charges against Campbell — as set forth in the petition the UPLC filed with this Court[8] — stem from "interviewing witnesses, fact investigation and fact analysis regarding legal actions or proceedings," or any other situation where the same functions could potentially be permissibly performed by a law enforcement officer, private investigator, or expert. *See LeBlanc v. People*, 56 V.I. 536, 541 (V.I. 2012) (holding, in as-applied challenge, that "we must analyze the specific allegations against [him] and determine whether this statute is vague as applied to the facts of the particular charge against him."). On the contrary, virtually all

---

[8] This Court is aware that, in the supplemental report it submitted to the Board of Governors, the UPLC references an affidavit from an attorney who states that he received discovery in a criminal case which listed Campbell as having been present at the interrogation of two witnesses. This allegation, however, was omitted from the petition that was filed with this Court, and it does not appear that the discovery referenced in the affidavit was ever supplied to the UPLC. Likewise, although several Assistant Attorneys General testified during their depositions of the fact that Campbell performed "intakes" for the Criminal Division — that is, interview complainants in cases where the police had deferred a decision on whether to make an arrest — neither the UPLC's petition nor its supplemental report allege that Campbell's participation in the "intake" process constituted the unauthorized practice of law.

of the charges against Campbell stem from conduct that is explicitly prohibited by the plain text of section 443.[9]

## B. Burden of Proof and Standard of Review

Having resolved all of Campbell's challenges to applying section 443 to his case, we must now determine whether his conduct constituted the unauthorized practice of law. In his petition, Campbell "denies the allegations contained in the [UPLC]'s complaint" and, rather than addressing the merits of any of the charges, "leaves the [UPLC] to its proofs." (Resp. 2.) Neither Campbell nor the UPLC, however, addresses the standards that apply when the UPLC files a petition with this Court. Therefore, prior to considering the unauthorized practice of law charges on the merits, we must ascertain the burden of proof and standard of review.

While section 443 confers original jurisdiction upon this Court in proceedings for unauthorized practice of law initiated by the Attorney General or the Virgin Islands Bar Association, the statute does not specify the burden of proof that applies to these actions. Nor do any published decisions of this Court — or, before this Court's creation, the Superior Court or District Court — provide any guidance. And although Supreme Court Rule 203(l) vests the UPLC with "the duty . . . to investigate unauthorized practice," and to "take steps to prevent or stop the unauthorized practice of law, including the initiation of legal proceedings," the rule is silent as to both the burden of proof, as well how much deference — if any — this Court should afford to the results of the investigation. Therefore, before addressing the merits of the UPLC's petition, we must determine both the burden of proof necessary to establish a violation of section 443, as well as the standard of review that applies to our consideration of the UPLC's factual findings and legal conclusions.

---

[9] We recognize that some of the charges brought against Campbell — such as that he provided legal advice to police officers — do not arise from acts specifically enumerated in the statute, but fall within the general prohibition on non-lawyers performing acts "usually done by attorneys-at-law in the course of their profession." 4 V.I.C. § 443(a). However, with respect to his as-applied challenge, Campbell solely argues that the statute allegedly prohibits non-lawyers from "interviewing witnesses, fact investigation and fact analysis regarding legal actions or proceedings." In other words, Campbell does not contend that a person of reasonable intelligence would not understand that section 443 prohibits the giving of legal advice, making legal arguments, engaging in legal analysis, or similar activities.

 We agree with the UPLC that section 443 is not a penal statute. Therefore, we must ascertain the standard from the two burdens of proof applicable to civil cases: preponderance of the evidence, and clear and convincing evidence. To prevail under a preponderance of the evidence standard, one needs only to prove that "it is more likely than not that an event occurred;" that is, that Campbell violated the statutory prohibition on the unauthorized practice of law. *United States v. Soileau*, 686 F.3d 861, 867 (8th Cir. 2012). The clear and convincing evidence standard, however, requires evidence sufficient to "enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue," although "[i]t is not necessary that the evidence be uncontradicted . . . provided it carries conviction to the mind or carries a clear conviction of its truth." *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 886 (1986) (citations and internal quotation marks omitted). Generally, the lesser preponderance of the evidence standard applies to ordinary civil cases, while the higher clear and convincing evidence standard attaches in quasi-criminal cases where "particularly important individual interests or rights are at stake" in the proceeding. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983). Thus, this Court applies the clear and convincing evidence standard to attorney discipline proceedings, given the obvious detrimental effect suspension or disbarment will have on a lawyer's livelihood. *See V.I. Bar v. Brusch*, 49 V.I. 409, 411-12 (V.I. 2008). Nevertheless, if a statute is silent on a burden of proof and no obvious liberty interests are affected by the proceeding, the preponderance of the evidence standard is sufficient to satisfy due process even if a finding that one violated the statute may result in "imposition of even severe civil sanctions." *Herman & MacLean*, 459 U.S. at 389-90. *See also El Paso Ref. Co. v. Scurlock Permian Corp.*, 77 S.W.3d 374, 381 (Tex. App. 2002) (holding that statutory silence on burden of proof militates "in favor of applying the same burden of proof as any other civil action").

 We conclude that the clear and convincing evidence standard applies to an unauthorized practice of law proceeding. Pursuant to our decision in *In re Rogers*, 57 V.I. 553, 564 (V.I. 2012), all complaints alleging that a Virgin Islands attorney has engaged in the unauthorized practice of law are referred exclusively to the Ethics and Grievance Committee ("EGC"), which applies the clear and convincing evidence standard. *Brusch*, 49 V.I. at 411-12. Thus, requiring the UPLC to prove its

claims against Campbell by a preponderance of the evidence would, in effect, adopt a rule that privileges Virgin Islands attorneys for no justifiable reason.[10] Moreover, since a holding that an individual has engaged in the unauthorized practice of law may adversely impact a future application for membership in the Virgin Islands Bar, *see Coggin*, 49 V.I. at 438, or potentially result in imposition of reciprocal discipline by another jurisdiction, we find that the proceedings sufficiently impact liberty interests to warrant the higher evidentiary standard.

We also find that a *de novo* standard of review is appropriate, and therefore hold that the UPLC is entitled to no deference with respect to either its factual findings or conclusions of law. First, we note that the general structure of section 443 contemplates an adversarial process, as reflected by the fact that the Attorney General is ordinarily expected to initiate such proceedings in this Court. While the Legislature — perhaps envisioning a situation similar to this one — vested concurrent authority with the Virgin Islands Bar Association to maintain such an action, the statute does not even mandate that it participate in the proceeding. While it is certainly desirable for a Virgin Islands Bar Association committee to investigate an unauthorized practice of law claim — as evidenced by this Court promulgating Supreme Court Rule 203(l) — we simply cannot conclude that a petition filed by the Virgin Islands Bar Association after an investigation conducted by the UPLC should receive any greater deference than a petition filed by the Attorney General. Therefore, we consider the UPLC's petition and the report outlining its findings the same as we would any other document filed by a party in an original proceeding before this Court, and afford it no special deference.

## C. The Unauthorized Practice of Law Charges

In its petition, the UPLC identifies numerous instances of Campbell engaging in the unauthorized practice of law in violation of section 443. We address each broad category of claims in turn.

---

[10] For instance, as we noted earlier, the UPLC's original petition sought sanctions against both Campbell and Attorney General Frazer, with this Court referring the accusations against Attorney General Frazer to the EGC consistent with the *Rogers* decision. We can think of no legitimate reason for the higher clear and convincing evidence standard to apply to the claim that Attorney General Frazer aided and abetted Campbell's unauthorized practice of law, but for Campbell himself to be subjected to the lower preponderance of the evidence standard.

### 1. Control of Case Strategy, Plea Offer, Dismissal, and Other Decisions

Campbell's control over the Assistant Attorneys General assigned to the Criminal Division represents the main thrust of the UPLC's petition. The UPLC argues that Campbell exercised an exorbitant amount of control over the trial strategies of individual prosecutors, and essentially completely divested his subordinates of any discretion with respect to offering plea agreements or dismissing charges in felony cases. Although Campbell has not disputed any of these underlying factual allegations in his response, we summarize the evidence gathered by the UPLC as part of our obligation to independently review the record to determine whether Campbell violated section 443.

The UPLC based its findings, in part, on correspondence between Campbell and the Assistant Attorneys General assigned to the Criminal Division. In a November 13, 2009 email, tiled "Plea Agreements and Victims' Rights," Campbell directed these attorneys that "all plea agreements involving a case with any felony charge must be brought directly to [him] for approval." On November 17, 2009, Campbell issued a memorandum to all Criminal Division attorneys mandating that, at sentencing, all prosecutors recommend a sentence "at or near the high end of the sentencing range" unless they first obtain an exception from him. In a January 8, 2010 email, Campbell informed the Assistant Attorneys General that they "are not to have direct contact with the Attorney General by way of e-mail, memo or otherwise unless he makes such a request or unless you have presented the matter to me *first*," because "[t]he Attorney General does not have the time, or the desire to serve as both Chief of the Criminal Division and as Attorney General for the Virgin Islands." After the Legislature enacted a new statute governing expungement of certain criminal records, Campbell, in a January 11, 2010 email, required all Assistant Attorneys General to obtain his approval before taking a position on behalf of the government in such matters. On March 23, 2010, Campbell had also sent an email to the Assistant Attorneys General, which stated "that there shall be NO plea offer of dismissal in a case containing a felony charge without my prior approval or the approval of the AG," and that Campbell "must see the written offer BEFORE it is presented to the defense counsel." Campbell sent another email to the Assistant Attorneys General on August 24, 2010, where he reiterated that "[n]o gun cases (or felony cases) are to be dismissed

without prior approval of the Chief of the Criminal Division or the Attorney General period," and further instructed that "[w]hen a defendant is arrested on a gun charge all prosecutors are required to seek the maximum bail and *shall not request an unsecured bond*," even if they are a first-time offender.

The UPLC also relied on deposition testimony from Assistant Attorneys General assigned to the Criminal Division during the pertinent period. One Assistant Attorney General, Loften Holder, Esq., testified that after he received the November 13, 2009 email, he spoke with Campbell, both in person and through email, about several felony cases in which he wished to present plea offers to the defendants, and that Campbell assumed "total discretion in disposing of these cases," with him making "the ultimate decision" in every case. (Holder Dep. Tr. 11.) Holder provided the UPLC with copies of email correspondence between himself and Campbell, in which Holder would submit a summary of the case and Campbell would reply with the specific plea offer that Holder would be permitted to present.

Courtney Reese, Esq., another lawyer who served as an Assistant Attorney General during the pertinent period, also testified that, shortly after assuming his position as "Chief of the Criminal Division," Campbell instituted a system in which the Assistant Attorneys General would have "to get permission from him to offer pleas" in felony cases, and that he "threatened that if we didn't do that we would be disciplined." (Reese Dep. Tr. 15.) Reese further testified that Campbell informed him and the other Assistant Attorneys General that they could offer pleas in misdemeanor cases on their own "unless there was some other problem," in which case they would also need to obtain his permission before offering a plea. (*Id.*) Reese, like Holder, testified that Campbell had "the final say" with respect to whether a particular criminal prosecution could be dismissed, and that neither he nor the other Assistant Attorneys General possessed the authority to dismiss a case on their own. (*Id.* at 22.) Moreover, Reese stated that Campbell had forbidden them from requesting permission directly from the Attorney General, and mandated them "to go through him first." (*Id.* at 22-23.) According to Reese, the Assistant Attorneys General in the Criminal Division were "basically like a secretary" during Campbell's tenure, for they were not permitted to use their independent judgment, but were treated like "how you tell a secretary to like just type up a particular draft and send it out." (*Id.* at 30.)

The UPLC also heard from Michael Motylinski, Esq., who also served as an Assistant Attorney General for part of this period. During his deposition, Motylinski testified that Campbell exercised control over how he could proceed with respect to decisions beyond pleas and dismissals. For instance, Motylinski stated that Campbell once mandated that he seek a continuance in a particular case because Campbell believed the evidence was weak, and in another case directed him to present his case in a particular way. (Motylinski Dep. Tr. 6, 12-13.) Motylinski testified that Campbell's directives "weren't optional," and identified several cases where Campbell made the ultimate decision with respect to plea offers. (*Id.* 7-8, 13.) Another Assistant Attorney General, Edward Veronda, Esq., testified similarly, and provided email correspondence between himself and Campbell in which he provided the facts of a case, with Campbell responding with the authorized plea offer.

Bason, the Assistant Attorney General who filed the initial grievance with the UPLC, corroborated Motylinski's testimony. Bason testified during his deposition, among other things, that in one case he had filed a motion for voluntary dismissal because two Federal Bureau of Investigation reports exonerated the defendant, and was then ordered by Campbell to withdraw the motion and proceed with the case, a directive which Campbell memorialized in a January 15, 2010 email. Likewise, Bason testified that Campbell did not merely want to know each prosecutor's trial strategy, but would tell them "what [the] trial strategy should be." (Bason Dep. Tr. 16.) When Bason repeatedly refused to obtain Campbell's approval prior to dismissing cases, Campbell submitted a May 24, 2010 memorandum to the Attorney General recommending immediate termination of Bason's employment.

The UPLC attempted to question Campbell about these allegations during his deposition. However, Campbell asserted numerous privileges when asked about his role as the "Chief of the Criminal Division," and declined, on that basis, to answer any substantive questions with respect to his role in the plea agreement process or in the development of trial strategies.[11] Based on our independent review of the record, it appears the only factual evidence that is in any way in tension with the evidence

[11] Since the UPLC never moved for this Court to compel Campbell to answer these questions, we decline to determine whether any of the privileges Campbell asserted at his deposition justified his failure to respond. However, as noted below, we question whether all of the

described above is the deposition testimony of Assistant Attorney General Renee Gumbs-Carty, who declined to say that Campbell exercised "control" over her ability to offer a plea, but — at least with her — simply engaged in "detailed discussion" with respect to plea offers. (Gumbs-Carty Dep. Tr. 6.)

 "[P]lea negotiations fall squarely within the practice of the law," and thus "may not be delegated to a non-attorney," for the plea bargaining process "require[s] the training, skill and accountability of an attorney." *In re Lexington County Transfer Court*, 334 S.C. 47, 512 S.E.2d 791, 793-94 (1999). *See also Matter of Coburn*, 181 Ariz. 250, 889 P.2d 608, 609 (1995) (a suspended attorney committed unauthorized practice of law by engaging in plea negotiations). We recognize that — with the exception of the one allegation which we decline to consider[12] — Campbell is not alleged to have personally participated in plea negotiations with defense counsel or particular defendants. Nevertheless, we find that this is a distinction without a difference, since the record establishes, by clear and convincing evidence, that Campbell exercised complete and apparently unfettered control over plea negotiations in felony and gun cases, in that (1) Assistant Attorneys General were forbidden from proposing their own plea offers to defense counsel, but were required to submit all potential plea offers to him; (2) if Campbell and an Assistant Attorney General disagreed, Campbell possessed the final word, and the Assistant Attorney General was required to submit Campbell's plea offer and forbidden from using his or her independent professional judgment to negotiate a different plea; and (3) if an Assistant Attorney General nevertheless defied Campbell, he or she would be subject to disciplinary action, including potential termination of employment. As Reese put it in his deposition, this arrangement required Assistant Attorneys General to operate "basically like a secretary."

 The same holds true for other significant prosecutorial decisions. It is difficult to imagine any decision that requires greater

---

privileges were actually applicable, in light of Campbell answering similar questions during the *Subdhan* hearings.

[12] The UPLC considered, along with the other evidence summarized above, a document summarizing an "interview" with Lee J. Rohn, Esq., who was the criminal defendant in *People v. Rohn*, Super. Ct. Crim. No. 113/2003 (STX). However, since the "interview" was not transcribed, and it does not appear that Rohn was under oath when she made these statements, we decline to rely on this document.

exercise of an attorney's professional judgment than the decision of a prosecutor to dismiss, before trial, criminal charges that he or she believes are not supported by the evidence. *See In re Richards*, 213 F.3d 773, 782, 42 V.I. 469 (3d Cir. 2000) ("[P]rosecutors have the power to decide whether to proceed with the prosecution of a charged defendant. Absent a controlling statute or rule to the contrary, this power resides solely in the prosecutor's hands until the impanelment and swearing of a jury."). Likewise, it has long been established that questions over trial strategy — including what bail to recommend, decisions about whether or not to offer particular evidence, whether or not to file particular motions, and what sentence to recommend at a sentencing hearing — are entrusted to the judgment of licensed attorneys. *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 93, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977) (Burger, C.J., concurring) (explaining that the criminal trial process requires attorneys, and not laymen, to bear "the immediate — and ultimate — responsibility" to decide questions of trial strategy); *Leake v. State*, 737 N.W.2d 531, 536 (Minn. 2007) ("Decisions about which witnesses to call at trial and what information to present to the jury are questions of trial strategy, which lie within the discretion of trial counsel."). As with plea negotiations, Campbell usurped this discretion from the Assistant Attorneys General he supervised,[13] and vested it in himself.[14]

### 2. *Court Appearances*

In its petition, the UPLC also argues that Campbell impermissibly appeared before the Superior Court in three criminal cases. We address each appearance in turn.

---

[13] Of course, a senior attorney possesses the authority, to the extent not inconsistent with ethical rules and other pertinent authorities, to direct the legal practice of subordinate attorneys. Had a member in good standing of the Virgin Islands Bar Association served as "Chief of the Criminal Division" and engaged in the same conduct, it clearly would not have violated section 443. But while Campbell served as "Chief of the Criminal Division," he was not a Virgin Islands lawyer, and — as explained above — the mere fact that he was appointed to this position did not grant him a license to violate the prohibition on the unauthorized practice of law by performing acts that can only be performed by licensed attorneys.

[14] We recognize that Gumbs-Carty testified that she did not believe Campbell exercised "control" over her ability to offer a plea. (Gumbs-Carty Dep. Tr. 6.) However, like the UPLC, we find that Campbell's own correspondence — particularly the November 13, 2009, March 23, 2010, and August 24, 2010 emails to all the Assistant Attorneys General assigned to the Criminal Division, and the January 15, 2010 email to Bason — establishes that compliance with Campbell's directives with respect to plea offers and dismissals was not optional.

### a. The George Hearing

At his deposition, Holder testified that he had been assigned to prosecute *People v. Reuben George*, Super. Ct. Crim. No. 126/2009 (STT) and *People v. Isaiah George*, Super. Ct. Crim. No. 127/2009 (STT), and wished to introduce a videotape into evidence at the defendants' trial. However, he received an email from Campbell on November 2, 2009, directing him not to admit the videotape into evidence because Campbell believed it had been illegally obtained. (Holder Dep. Tr. 4-5.)

When Holder refused to follow his directive, Campbell appeared with Holder at a November 5, 2009 hearing before the Superior Court. According to the hearing transcript, Holder and counsel for both defendants requested a sidebar conference, at which point Holder first introduced Campbell to the Superior Court judge as the new "Chief of the Criminal Division," and then stated that he "would like to bring to the Court's attention the facts and circumstances surrounding the retrieval of the videotape," including how the detective he had called as a witness "came into custody of the tape." (George Hearing Tr. 3.) Once Holder finished speaking, the following discussion occurred:

> [CAMPBELL]: And just to elaborate, Your Honor, so you know how things are coming — first of all, I'd like to state for the record I'm currently not admitted into the Virgin Islands Bar. I'm a member of the State of New Jersey, an active member in the Bar. I had been previously admitted to the Virgin Islands. I recently returned and my paperwork is going through for my admission.
>
> I was speaking with Attorney Holder —
>
> ATTORNEY HOLDER: Why don't you just let —
>
> [CAMPBELL]: I just need to give the Judge some background so he knows what's going on.
>
> ATTORNEY HOLDER: Okay, share it. Would you let — Judge, just ask [the detective] how he came into possession of the tape. Just ask.
>
> THE COURT: Well, I take it there is an ongoing investigation with regard to the shooting?
>
> ATTORNEY HOLDER: That's correct.
>
> [CAMPBELL]: And we believe that there may have been an issue with respect to — an impropriety with respect to how the videotape was obtained.

ATTORNEY HOLDER: No, not we. He. I don't. I don't. So we disagree with that.

[CAMPBELL]: So, I felt that as an officer of the court we need to advise the Court of it and the Court can make its decision as to whether or not there is an impropriety.

THE COURT: Okay, thank you. Go right ahead.

(George Hearing Tr., 4-6.) The sidebar concluded and, shortly thereafter, the judge permitted Holder to admit the videotape into evidence.

■ We agree with the UPLC that Campbell violated the prohibition on unauthorized practice of law in making this appearance. Section 443, by its own terms, prohibits an individual who is not a member in good standing of the Virgin Islands Bar Association from "the doing of any act by a person who is not a member in good standing of the Virgin Islands Bar Association for another person," such as "the appearance, acting as the attorney-at-law, or representative of another person, firm or corporation, before any court, referee, department, commission, board, judicial person or body authorized or constituted by law to determine any question of law or fact or to exercise any judicial power." 4 V.I.C. § 443(a). In this case, Campbell sought to influence the judge's determination of a question of law or fact — the admissibility of the videotape — and did so as a "representative" of the People of the Virgin Islands, by being introduced as the "Chief of the Criminal Division." And while we recognize that Campbell disclosed that he had not been admitted to the Virgin Islands Bar, we emphatically reject any implication that one can simply state "I'm not currently admitted into the Virgin Islands Bar," proceed to engage in precisely the activities forbidden by section 443, and then rely on those magic words as a talisman to escape liability under the statute. See Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214, 214 (1917). Accordingly, we conclude that Campbell violated the prohibition on unauthorized practice of law through his appearance at the November 5, 2009 hearing.

### b. The Subdhan Hearings

The UPLC also alleges that Campbell violated section 443 when he participated in two hearings in *People v. Subdhan*, Super. Ct. Crim. No. 499/2008 (STT). At a January 5, 2010 hearing, the Superior Court judge presiding over the matter, in light of defense counsel's frustration

at the court's rejection of a plea agreement mandating a seven year prison sentence and the refusal of the government to offer an alternate plea agreement, required Campbell, as "Chief of the Criminal Division," to appear and explain the Department of Justice's policies and procedures in offering pleas in cases involving firearms. At the hearing, Campbell stated that the Attorney General made the decision in this particular case, but nevertheless explained and defended the Department of Justice's policies and procedures in firearm cases. Finding the response unsatisfactory, the judge ordered Campbell, as well as the Attorney General, to attend another hearing on the matter, which occurred on March 5, 2010.

Although the Superior Court judge heard from the Attorney General, defense counsel, and the Assistant Attorney General assigned to the matter at the March 5, 2010 hearing, he never recognized or addressed Campbell. Nevertheless, Campbell asked to be heard, defended the decision to offer the defendant a plea agreement requiring a seven year incarcerative sentence, and explained what factors led to that decision, as well as the decision to not offer a lesser plea. While Campbell had represented at the January 5, 2010 hearing that the Attorney General had personally made the decision in this case, throughout his statement Campbell used the pronoun "we" when describing the process, e.g., "We, as Attorney Generals for the Virgin Islands, have a duty to protect the community." (Subdhan Hearing Tr. 20.) Once Campbell concluded his statement, defense counsel orally moved to strike Campbell's remarks in their entirety, on the grounds that he was not admitted to the Virgin Islands Bar. The judge, however, denied the oral motion because he "let him appear in this case for a limited purpose of representing to the Court what the position of the Attorney General is." (Subdhan Hearing Tr. 25.)

■■■■ We agree with the UPLC that Campbell's appearances at both hearings constituted the unauthorized practice of law. Like the *George* hearing, Campbell appeared at the *Subdhan* hearings in a representative capacity, namely, "for [the] purpose of representing to the Court what the position of the Attorney General is," and section 443 unequivocally prohibits "the appearance, acting as the . . . representative of another person, firm or corporation, before any court." Moreover, Campbell's statements were clearly calculated to influence the Superior Court's decision to exercise judicial power in the *Subdhan* case — namely, whether or not to proceed to trial.

In both his response and his deposition testimony, Campbell defends his conduct by noting that the Superior Court judge had ordered his appearance, and states that he "could have been held in contempt if he chose not to appear in Court when Ordered to do so by a judge of the Superior Court." (Resp. 11.) First, we note that the Superior Court ordered Campbell to appear because he had held himself out as the "Chief of the Criminal Division." As we explain in greater detail below, Campbell, as a non-lawyer, violated section 443 by using this title, since the "Chief of the Criminal Division" position always required supervision of licensed attorneys assigned to the Criminal Division, and Campbell expanded the role of the position even further by, among other things, divesting his subordinates of any and all discretion over plea offers in felony and gun cases. Consequently, Campbell himself bears responsibility for the Superior Court ordering his appearance in criminal cases where a question arose with respect to an Assistant Attorney General's conduct, since his appearance would not have been ordered in the first place if he had not violated section 443 by performing and expanding the functions of the position associated with his job title.

 In any case, we agree with Campbell that lawyers and non-lawyers both possess an obligation to comply with a valid order directing their appearance before the Superior Court. But section 443 does not prohibit non-lawyers from appearing before the Superior Court — rather, it prohibits "the appearance, *acting as the attorney-at-law, or representative of another person, firm or corporation.*" 4 V.I.C. § 443(a) (emphasis added). Thus, Campbell could have appeared at both hearings, but declined to respond to the Superior Court's questions on the grounds that doing so may constitute the unauthorized practice of law. And rather than explaining and defending the Department of Justice's policies, Campbell could have simply told the Superior Court that the Attorney General made the decision in this particular case. In the event the Superior Court would have nevertheless persisted with its inquiry — which, based on the record, we are not confident would have been the case[15] — Campbell possessed

---

[15] The record reflects that the Superior Court, after being told by Campbell at the January 5, 2010 hearing that the Attorney General had been the decision maker with respect to the plea offer in the *Subdhan* case, responded by continuing the matter and directing the Attorney General to be present at the March 5, 2010 hearing. Moreover, as noted above, the transcript of the March 5, 2010 hearing reflects that the Superior Court judge directed no questions to

other alternatives besides standing in contempt, such as asserting the very same privileges he raised when UPLC representatives questioned him about the Department of Justice's plea agreement policies. (Campbell Dep. 30-32, 42, 46.) Campbell could have filed a petition for writ of prohibition with this Court, requesting that we enjoin the Superior Court judge from requiring him, an individual not admitted to the Virgin Islands Bar, from representing the position of the Department of Justice in a criminal case. *See* V.I.S.CT.R. 13(a). And, of course, Campbell could have simply filed an application with this Court for *pro hac vice* admission in the *Subdhan* case. *See* V.I.S.CT.R. 201.

■ Likewise, we find it immaterial that the Superior Court judge denied defense counsel's oral motion to strike Campbell's statements. Clearly, Superior Court judges and magistrates play a critical role in enforcing, in individual cases, the legal ethics and bar admissions rules promulgated by this Court, as well as the prohibition on unauthorized practice of law adopted by the Legislature through section 443. Individual judges and magistrates are, among other things, expected to disqualify licensed attorneys from representation if it results in an impermissible conflict of interest, and to refer professional misconduct that occurs in their presence to the EGC, and — of course — only allow appearances by members of the Virgin Islands Bar Association.[16]

■ Nevertheless, it is ultimately this Court, having both the statutory and inherent authority to regulate the legal profession, which has the final word on these issues. It goes without saying that a Superior Court judge's denial of a motion to disqualify an attorney despite the presence of an obvious unwaivable conflict of interest would not preclude the Office of Disciplinary Counsel from initiating attorney discipline proceedings or prohibit the EGC from ultimately imposing sanctions consistent with the procedure set forth in Supreme Court Rule 207. This is because Disciplinary Counsel and the EGC would not have been parties to the earlier Superior Court proceeding or in privity with any of the parties, *see*

---

Campbell whatsoever, and instead exclusively addressed the Attorney General and the Assistant Attorney General prosecuting the case — that is, until Campbell requested permission to be heard.

[16] Although not determinative to our analysis, we note that the record of proceedings for the January 5, 2010 hearing contains no indication that the Superior Court judge was aware, prior to ordering his appearance, that Campbell was holding the "Chief of the Criminal Division" title despite not being a member of the Virgin Islands Bar Association.

*Smith v. Turnbull*, 54 V.I. 369, 375 (V.I. 2010) (citing *CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 194 (3d Cir. 1999)); *Gilbert v. People*, 52 V.I. 350, 364 (V.I. 2009) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970)), and — in any event — the Superior Court would have lacked jurisdiction to impose any formal attorney discipline as part of the earlier proceeding. *See Smith*, 54 V.I. at 376.

We can find no reason to impose a different rule with respect to unauthorized practice of law allegations. The UPLC was clearly not a party to the *Subdhan* proceeding, nor was it in privity with the defendant. Even if the defendant possessed an interest in establishing an unauthorized practice of law violation as grounds for striking Campbell's statements, section 443 only confers the Attorney General and the Virgin Islands Bar Association with standing to obtain the enumerated statutory remedies for instances of unauthorized practice. Therefore, the Superior Court's denial of defense counsel's motion to strike does not preclude the UPLC from requesting relief from this Court pursuant to section 443.

### c. The Greenaway Hearing

Finally, the UPLC contends that Campbell violated section 443 when he appeared at a June 17, 2011 show cause hearing in *People v. Greenaway*, Super. Ct. Crim. No. 176/2000 (STT). Based on the record of proceedings prepared by the Clerk of the Superior Court, it appears that Brenda Scales, Esq., an Assistant Attorney General, appeared late at a sentencing hearing scheduled for June 11, 2011, which led to the Superior Court judge presiding over the matter to direct both Scales and Campbell — as "Chief of the Criminal Division" — to appear at the subsequent show cause hearing. At the hearing, Campbell stated that he was not specially admitted, but then proceeded to apologize and state that the late appearance would not be the status quo. Based on this representation, the judge imposed a $100.00 fine on Scales, but suspended the fine so long as no subsequent violation would occur.

At the outset, we note that the *Greenaway* hearing represents a somewhat closer case than the *Subdhan* and *George* hearings, in that Campbell did not formally present legal arguments to the Superior Court. However, we again must recognize that section 443 prohibits "the appearance, acting as the attorney-at-law, or representative of another person, firm or corporation before any court . . . authorized or constituted

by law to determine any question of law or fact or to exercise any judicial power." 4 V.I.C. § 443(a). Here, the record reflects that Campbell — who was not sworn in as a witness — made statements to the Superior Court judge which were calculated to persuade the judge to either impose no sanction or a lenient sanction against Scales; statements which the judge ultimately relied on in crafting the $100.00 suspended fine. Moreover, while not determinative to our result, we note that the record of proceedings prepared by the Clerk of the Superior Court identifies Campbell as an attorney of record for the June 17, 2011 show cause hearing, rather than as a witness. Under these circumstances, we hold that Campbell assumed the role of Scales's advocate at the hearing, and therefore engaged in the unauthorized practice of law.[17] *Accord In re Ferguson*, 326 B.R. 419, 423 (Bankr. N.D. Ohio 2005) ("The unauthorized practice of law occurs when a non-attorney acts as an intermediary to advise, counsel, or negotiate on behalf of an individual . . . .").

### 3. *Legal Advice to Police Officers*

According to the UPLC, Campbell also engaged in the unauthorized practice of law by providing legal advice to members of the Virgin Islands Police Department. To support its claim, the UPLC relies primarily on various documents that evidence interactions between Campbell and individual detectives. In a February 23, 2010 memorandum to Detective Jose Allen, Campbell states that he has reviewed a case submitted to him and concludes that he "do[es] not believe that there is sufficient evidence to support an arrest warrant." The UPLC also considered a December 27, 2010 police report prepared and submitted by Detective Sofia Rachid, in which she states that "[o]n 12/27/10 Attorney William (sic) Campbell from the Attorney General's Office contacted me via cell and stated that I could go ahead and arrest [the suspect] without a warrant because there was probable cause for the arrest."[18]

---

[17] Again, we recognize that the Superior Court judge had ordered Campbell to appear at the June 17, 2011 hearing. However, for the same reasons given earlier in the context of the *Subdhan* hearings, this does not serve as a defense to the unauthorized practice of law charge.

[18] During Veronda's deposition testimony, a member of the UPLC introduced into evidence other documents that apparently contained information regarding Campbell's interaction with other police officers. However, since neither the UPLC nor Campbell has provided this

■ Section 443 prohibits an individual who is not a member in good standing of the Virgin Islands Bar Association from performing acts "usually done by attorneys-at-law in the course of their profession." Unquestionably, the giving of legal advice falls squarely within the definition of activities that must be performed by a duly-licensed attorney. It should go without saying that the existence or absence of probable cause for an arrest is an inquiry which requires legal analysis. *See Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003). In fact, the United States Supreme Court has expressly characterized a prosecutor advising a police officer as to the existence of probable cause to arrest a suspect as "legal advice" that entitles the prosecutor to receive qualified immunity from civil liability. *See Burns v. Reed*, 500 U.S. 478, 492-93, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991). Accordingly, we agree with the UPLC that Campbell violated section 443 when he advised Detectives Allen and Rachid in these matters.

### 4. *Holding Oneself Out as a Licensed Virgin Islands Attorney*

The petition also states that Campbell violated section 443 by holding himself out as a Virgin Islands attorney despite the fact that he was not a member of the Virgin Islands Bar Association, both through specific representations made to certain individuals and generally through his use of the "Chief of the Criminal Division" and "Assistant Attorney General" job titles and "Esquire," "Esq.," and "Attorney" honorifics. *See* 4 V.I.C. § 443(b)(1) (authorizing action "against any person who renders, offers to render or holds himself out as rendering any service which constitutes the unauthorized practice of law."). We address each claim in turn.

### a. *Specific Representations*

The UPLC considered a sworn affidavit by Lee J. Rohn, Esq., counsel to the defendant in *People v. Donastorg*, Super. Ct. Crim. No. F109/2010 (STT), prior to his arrest. In her affidavit, Rohn outlines an incident that occurred in April 2010, when she accompanied the defendant to a police station before charges were filed and encountered Campbell when they arrived. According to Rohn, when asked who he was, Campbell stated that "he was the attorney handling the *Donastorg* case," and "that as the

---

Court with copies of these documents, we decline to consider them, or Veronda's representation of their contents, as evidence in this matter.

attorney on the case, he had been investigating the allegations against Donastorg for a month." Rohn further states in her affidavit that Campbell "engaged in a conversation with her as the prosecutor" and "explained his view of the evidence." Rohn states that Campbell contacted her later that night on her cell phone stating that he had decided to charge Donastorg and that "[h]e further agreed as the prosecutor to allow [him] to be released under his own recognizance."

In addition to the Rohn affidavit, the UPLC considered a July 22, 2010 letter Campbell sent to Kema Rezaire, an individual against whom a complaint had been filed with the Virgin Islands Police Department. The letter, which was issued on Department of Justice letterhead and contains Campbell's signature, reads, in pertinent part, as follows:

> Dear Ms. Rezaire:
>
> Mrs. James has filed a complaint with the Virgin Islands Police Department and this office against you. Your actions, as alleged, may constitute:
>
> 1. Disturbing the Peace, in violation of Title 14 Virgin Islands Code Section 622(1), punishable by a fine of up to $100 and ninety (90) days in jail or both; and
>
> 2. Simple Assault and Battery, in violation of Title 14 Virgin Islands Code Section 299(2), punishable by a fine of up to $250 and up to six (6) months in jail or both.
>
> Ms. Rezaire if you are engaging in such behavior, please **CEASE IMMEDIATELY**. This letter should serve as a **WARNING**. If Mrs. James should contact this office again, indicating that you have committed any unlawful acts against her, we will conduct an investigation, and if warranted Ms. Rezaire, you may be **arrested and criminal charges filed against you**.
>
> Sincerely,
> Wilson J. Campbell, Esq.
> Chief of the Criminal Division

(emphasis in original). Again, Campbell does not respond to either document in his response.

■■■ We find that both representations unquestionably fall within the purview of "hold[ing] [one]self out as rendering any service which

731

constitutes the unauthorized practice of law." 4 V.I.C. § 443(b)(1). Campbell's letter to Rezaire represents the textbook example of conduct which violates section 443(b)(1): a letter threatening a layman with arrest and criminal prosecution that was issued on Department of Justice letterhead and using the "Esq." honorific and the "Chief of the Criminal Division" job title. *See, e.g., Cincinnati Bar Ass'n v. Davis*, 590 N.E.2d 916, 918 (Ohio Bd. Unauth. Prac. 1992) (identifying oneself as an individual's attorney and proceeding to negotiate contract with another on their behalf); *Morgan v. State Bar*, 51 Cal. 3d 598, 274 Cal. Rptr. 8, 797 P.2d 1186, 1188 (1990) (negotiations with opposing counsel). In fact, although doing so would not have rendered the conduct acceptable, we note that the letter does not even contain a disclaimer that Campbell is not admitted to practice law in the Virgin Islands. Viewing the document in its totality, we can reach no conclusion other than that Campbell deliberately intended to mislead Rezaire into believing that the letter came from a licensed attorney who possessed the power to order her arrest and prosecution.

The oral representations to Rohn, while not as egregious, are also squarely within this prohibition. Although Rohn — a member of the Virgin Islands Bar — is less likely to be misled about Campbell's bar admission status than a layman, we emphasize that section 443(b)(1) does not require that an individual actually be confused or misled; the statute, by its own terms, prohibits Campbell from holding himself out as an individual who may perform any act constituting the practice of law in the Virgin Islands.

### b. General Representations

The UPLC also contends that Campbell's use of the "Chief of the Criminal Division" and "Assistant Attorney General" job titles, as well as repeated use of "Esquire," "Esq.," and "Attorney," in emails and court pleadings — including those filed *pro se* in both this matter and the special admission proceeding — also violates section 443. In his deposition, Campbell admitted that he presented himself to others as "Attorney Campbell" because "that's a cultural thing here," but denied that, in doing so, he ever conveyed that he was representing the government in any particular case. (Campbell Dep. 43.) Additionally, the record reflects that Campbell referred to himself as "Attorney Campbell" in one of the first emails he sent to the Assistant Attorneys General in the Criminal Division.

We hold that Campbell's general use of "Esquire," "Esq.," and "Attorney" in emails and other correspondence, even when not issued in conjunction with a specific legal matter, constitutes "hold[ing] [one]self out as rendering any service which constitutes the unauthorized practice of law." 4 V.I.C. § 443(b)(1). We agree with the numerous courts that have held that these terms, by their very nature, imply that one possesses the authority to provide legal services as a licensed attorney. *See, e.g., Kentucky Bar Ass'n v. Brooks*, 325 S.W.3d 283, 289 (Ky. 2010) (listing business under "Attorneys" heading in Yellow Pages); *Disciplinary Counsel v. Brown*, 121 Ohio St. 3d 423, 2009 Ohio 1152, 905 N.E.2d 163, 171 (2009) (use of "Esq.," "Esquire," "J.D.," and "Juris Doctor"); *In re Mittower*, 693 N.E.2d 555, 558 (Ind. 1998) (use of "esquire," "general counsel," and "attorney-in-fact"). The fact that Campbell is licensed to practice law in New Jersey is irrelevant, given that these communications occurred in, and were clearly targeted to, residents of the Virgin Islands.[19] *See, e.g., Florida Bar v. Lister*, 662 So.2d 1241, 1241-42 (Fla. 1995) (use, by Wisconsin attorney in Florida, of "Esquire" in correspondence and identification as "attorney" in telephone conversations).

---

[19] In reaching the decision herein, we emphasize that not every use of "Esquire," "Esq.," and similar terms will violate section 443, and that every inquiry will necessarily be heavily dependent on the facts of the particular case. We do not believe, for example, that an out-of-Territory attorney violates section 443 by simply using the suffix "Esq." when making a reservation for a Virgin Islands hotel. Additionally, we recognize that our March 3, 2011 Opinion in his bar admissions matter was captioned "In the Matter of the Application of Wilson J. Campbell, Esquire, for Special Admission to the Virgin Islands Bar," and that the captions of other special admission and *pro hac vice* admission matters before this Court have included the "Esquire" designation to reflect the fact that the applicant is admitted to the practice of law in another jurisdiction, as is required by Supreme Court Rules 201 and 202. *See, e.g., In re Application of Alvis*, 54 V.I. 408, 410 (V.I. 2010). However, we do not believe that this Court's inclusion of "Esquire" in this context is in tension with section 443 because the remainder of the caption — which clearly reflects the matter is one for admission to the Virgin Islands Bar — unquestionably eliminates any possibility that one may believe that the applicant is presently authorized to practice law in the Virgin Islands. This is particularly true with respect to our March 3, 2011 Opinion, where the text of the document outright directed the CBE to consider whether that Campbell's use of "Esq." and "Esquire" constituted the unauthorized practice of law in violation of section 443. Campbell's use of "Esq." and "Esquire" does not fall into any permissible use of the terms, however, given that the honorifics were often coupled with terms such as "Chief of the Criminal Division," often appeared in professional correspondence on Department of Justice letterhead, and contained no indication that Campbell was not licensed to practice law in the Virgin Islands.

We also reject Campbell's claim that the "culture" of the Virgin Islands legal community permitted him to hold himself out as "Attorney Campbell." First, the record contains absolutely no evidence pertaining to Virgin Islands legal culture, and the UPLC possessed no obligation to create a record on this issue, given that it was raised in only a fleeting manner in Campbell's deposition testimony and — in any event — Campbell possessed the burden of establishing his affirmative defense that Virgin Islands culture somehow authorized conduct that is otherwise explicitly prohibited by statute. *Cf. Attorney Grievance Comm'n v. Bakas*, 322 Md. 603, 589 A.2d 52, 53 (1991) (in attorney discipline context, the respondent attorney bears the burden of proof with respect "to factual matters sought to be established by the attorney in defense of the attorney's position"). But even if we were inclined to consider judicial opinions, oral argument transcripts, and other public records to which this Court has access, we can identify no instances in which we have ever referred to an individual who is not a regular, special, or *pro hac vice* member of the Virgin Islands Bar Association as "Attorney."

■ The same is true for use of the "Assistant Attorney General" title. As noted above, the term "Assistant Attorney General" itself connotes that one is a licensed Virgin Islands attorney. However, even the formal description of the position states that "this position requires legal professional work which is related to innumerable legal areas," and then identifies numerous job duties that clearly constitute the practice of law.[20] While there is no evidence that Campbell fulfilled every single one of the

---

[20] The duties set forth in the job description, which are not all inclusive, are as follows:

Appears for and represents the executive branch of the Government of the Virgin Islands in all civil and criminal proceedings in which the Government has an interest.

Prosecutes all offense [sic] against the law of the Virgin Islands in the Superior Court of the Virgin Islands.

Represents the Government of the Virgin Islands in all appeals before the Supreme Court of the Virgin Islands and federal appeals courts.

Performs legal research regarding representation before the courts in [sic] behalf of the Government of the Virgin Islands.

Interviews witnesses, victims and law enforcement officers to ascertain facts of each case and correlates findings to prepare cases before the courts.

Provides legal advice to all executive departments, boards, commissions, agencies, instrumentalities and officers of the Government of the Virgin Islands.

Drafts pleadings, briefs, motions, orders and other court related documents required for prosecuting cases.

duties which require Virgin Islands Bar membership — even though, as described above, he did perform several of them during his tenure — his use of this title clearly rose to the level of "hold[ing] [one]self out as rendering any service which constitutes the unauthorized practice of law." 4 V.I.C. § 443(b)(1).

Similarly, the titles "Chief of the Criminal Division" and "Criminal Division Chief," when used in the context of the Virgin Islands Department of Justice, inherently conveys that one is authorized to practice law in the Virgin Islands, by virtue of the ability to supervise attorneys in the Criminal Division. We note that, unlike the "Assistant Attorney General" position, the formal job description primarily contains routine administrative duties which — with some exceptions — could be permissibly performed by a non-lawyer.[21] However, the description of the

---

Researches and drafts legal opinions related to the government departments and their operations.

Drafts regulations, contracts and other legal instruments in which the Government of the Virgin Islands has an interest.

Reviews legal instruments prepared by other government attorneys and advises as to legal sufficiency.

Prepares correspondence related to innumerable legal areas.

Attends conferences related to innumerable legal areas.

Performs other related work as required.

(Att'y Gen. Resp. to UPLC Subpoena, 12-13.)

[21] The job description sets forth the following duties:

I. Responsible for daily management of GLS inclusive of:

A. Assignment of criminal and civil cases.

B. Assignment of intake or duty officer.

C. Development of policy and guidelines for:
 1) Plea agreements
 2) Sentencing
 3) Settlement of civil cases up to $25,000

D. Supervision of time and attendance of all staff assigned.

E. Completion of all assignments in a timely manner by staff.

F. Meeting of all court imposed due dates by staff.

G. Provide guidance to staff on Department policy effective case management and case handling.

II. Determine the training needs of staff and:

A. Implement an effective training program both in service professional and in house or off-island.

III. Prepare performance appraisals for all staff (legal and support).

position requires the "Chief of the Criminal Division" to prepare guidelines for plea agreements, sentencing, and settlement of civil cases up to $25,000.00. A non-attorney simply cannot limit the discretion of licensed attorneys in such a manner.[22] Moreover, the record in this case reveals that Campbell interpreted the position as authorizing him to completely divest prosecutors of *any* discretion over pleas and sentencing, as well as numerous other matters that are not even set forth in the job description. Therefore, we agree with the UPLC that Campbell's use of the "Chief of the Criminal Division" and "Criminal Division Chief" titles violated section 443.

## D. Remedies

Having concluded that Campbell has engaged in the unauthorized practice of law, we must now determine the appropriate remedies for the violations. In its petition, the UPLC requests that this Court issue an injunction and a declaratory judgment, assess costs, and impose the discretionary monetary penalties provided for by statute, which is "a fine not exceeding $500 for each such violation" of the unauthorized practice of law statute. 4 V.I.C. § 443(b)(2). The UPLC, however, has not proposed a specific penalty, nor filed an itemized bill of costs.

Similarly, Campbell's response does not specifically address the issue of what remedies this Court should order in the event it rules in the

---

IV. Assist in the recruitment of candidates for position in GLS.

 A. Participation as a member of the Hiring Committee to review applicant resumes and writing sample, interview candidates selected by the Committee and make hiring recommendations to the Attorney General.

V. Timely review and completion of such tasks or projects as may be assigned by the Attorney General or Deputy Attorney General.

VI. Oversight and responsibility for the effective management of the Sections of White Collar Crime and Paternity and Child Support.

VII. Appear and/or represent the Department at public function[s].

VIII. Implement departmental policies established by the Attorney General and management for the Division in accordance with department policy.

(Att'y Gen. Resp. to UPLC Subpoena, 16.)

[22] Of course, it goes without saying that non-attorneys, when serving as the client in an attorney-client relationship, may place certain limitations on their counsel, including controlling the decision to settle or dismiss a case filed on their behalf. Campbell, however, was clearly not the "client" of any of the prosecutors he supervised as "Chief of the Criminal Division."

736

UPLC's favor. However, Campbell cites to *In re Mitchell*, 901 F.2d 1179 (3d Cir. 1990), a case where the United States Court of Appeals for the Third Circuit declined to hold that two suspended attorneys engaged in the unauthorized practice of law because the particular issues presented in that case were novel and had never been previously addressed, and announced that the analysis set forth in the opinion would only apply prospectively. Additionally, Campbell implies that leniency is warranted because he "[a]cted in good-faith and diligently consistent with then existing law." (Resp. 16.)

 Upon considering the totality of the circumstances, we agree with Campbell that leniency is warranted. As noted earlier, section 443, and not the Model Rule of Professional Conduct 5.5, defines the unauthorized practice of law in the Virgin Islands. Likewise, Supreme Court Rules 201, 202, and 204, and not Model Rule 5.5, govern admission to the Virgin Islands Bar. Nevertheless, the relationship between Model Rule 5.5, section 443, and the Supreme Court Rules was not always clear, and an individual such as Campbell could — in the absence of prior guidance — reasonably conclude that Model Rule 5.5 applied in lieu of section 443. Importantly, we note that Model Rule 5.5 provides that "a lawyer admitted in another United States jurisdiction . . . may provide legal services on a temporary basis in this jurisdiction that . . . are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer . . . is authorized by law or order to appear in such proceeding *or reasonably expects to be so authorized*." MODEL R. PROF'L CONDUCT 5.5(c)(2) (emphasis added). Having been previously been specially admitted by the Superior Court prior to this Court's creation, during a period in which special admission was routinely granted without the completion of a thorough character and fitness review, Campbell could, based on his past experience as a specially admitted attorney, have reasonably expected, at the time he commenced his employment as "Chief of the Criminal Division," that the Department of Justice's motion for his special admission would be granted.

We do not believe, however, that Campbell should receive no sanction for his misconduct. In *Mitchell*, the Third Circuit did not impose any sanction on the suspended attorneys because "*until now* the rules governing suspended attorneys in the practice of law were unclear." 901 F.2d at 1191 (emphasis added). However, over the course of the nearly two years in which he was employed as the "Chief of the Criminal

Division," Campbell received notice that his conduct constituted the unauthorized practice of law. As a threshold matter, Model Rule 5.5 provides that a non-admitted attorney "may provide legal services on a *temporary* basis in this jurisdiction," (emphasis added), and the record reflects that the Department of Justice notified Campbell, before he accepted the job, that the "Chief of the Criminal Division" position constituted full-time, permanent employment in the Virgin Islands. And while Campbell may have "reasonably expect[ed]" for this Court to grant the Department of Justice's motion for his special admission during the first few months the motion was pending, any reasonable expectation of the motion being granted should have evaporated once the CBE informed Campbell that it would convene a due process hearing to determine whether he possessed the good moral character necessary for his admission. Therefore, even if Campbell believed Model Rule 5.5 applied to the exclusion of section 443, he should have known that his conduct violated that rule as well.

Likewise, the UPLC's June 1 and June 4, 2010 letters should have placed Campbell on notice both of section 443's existence, and the Virgin Islands Bar Association's position that section 443, and not Model Rule 5.5, governed the unauthorized practice of law in the Virgin Islands. Perhaps most importantly, this Court's March 3, 2011 Opinion, by identifying section 443 as the applicable legal authority, and noting that Campbell's use of the "Chief of the Criminal Division" and "Esquire" titles, as well as his assertion of authority to direct how prosecutors may proceed with criminal cases could constitute the unauthorized practice of law, should have placed Campbell on notice that his conduct violated Virgin Islands law. Thus, unlike the respondents in *Mitchell*, Campbell was alerted to the fact that his conduct was wrongful, and received an opportunity to modify his behavior in light of that guidance. But rather than even reexamine — let alone modify — his behavior in light of these developments, Campbell chose to remain willfully ignorant,[23] and simply

---

[23] For example, this Court notes that, in his June 7, 2010 letter, Campbell represented to the UPLC that he had already received "a satisfactory background check." However, the record reflects that the CBE had already informed him, several months earlier, that it possessed serious concerns about his conduct in New Jersey, and intended to convene a due process hearing after the New Jersey Supreme Court issued a decision.

proceeded with his unauthorized conduct without making even the most minimal of changes.[24]

After considering these and other relevant factors,[25] we grant the UPLC's requests for a declaratory judgment that Campbell engaged in the unauthorized practice of law in the Virgin Islands, and an order permanently enjoining Campbell[26] from engaging in further unauthorized

---

[24] For instance, the record in this case, as well as S. Ct. BA. No. 2009-0230, reflects that Campbell continued to use the "Chief of the Criminal Division" title and "Esq." honorific in court filings and correspondence even after this Court issued its March 3, 2011 Opinion.

[25] In mitigation, we recognize that, with respect to his appearance at the *George* hearing, Campbell may have potentially believed that, as Holder's supervisor, he possessed an ethical obligation to notify the Superior Court that he intended to introduce potentially illegally obtained evidence. *See In re Anonymous Member of S.C. Bar*, 346 S.C. 177, 552 S.E.2d 10, 13 (2001) (noting that supervisor of subordinate attorney who engages in misconduct may be held vicariously liable for that misconduct if supervisor fails "to take remedial measures to avoid or mitigate the consequences of that behavior."). However, since serving as Holder's supervisor itself violated the prohibition on unauthorized practice, we view this as only a very slight mitigating factor, particularly given that Campbell possessed other options to take correction action besides making a court appearance, such as notifying the Attorney General or referring Holder to the EGC.

In aggravation, we cannot ignore Campbell's lack of remorse, seemingly willful ignorance of the prohibition on unauthorized practice, and apparent contempt for the special admissions process. For instance, in his response to the UPLC's petition filed in this Court, Campbell maintains that he believed he could engage in any conduct he wished without obtaining Virgin Islands Bar membership, with the sole exceptions of signing motions in his own name and arguing in court without the presence of a licensed attorney. We have been unable to identify any United States jurisdiction with such an exceptionally narrow definition of the unauthorized practice of law, including New Jersey, where Campbell is presently licensed to practice law. *See In re Jackman*, 165 N.J. 580, 761 A.2d 1103, 1106-07 (2000) (rejecting argument that law firm associate not licensed to practice law in New Jersey could engage in transactional work, interview and counsel clients, prepare and sign documents, negotiate with other lawyers, or otherwise "handl[e] legal matters implicating the rights and remedies of clients," and noting that "[o]ther states with similar licensing requirements have likewise concluded when confronted with comparable circumstances.") (collecting cases). Likewise, from his claim at the *George* hearing that "[his] paperwork is going through for [his] admission," to his misrepresentation in his June 7, 2010 letter to the UPLC that he received "a satisfactory background check" and that "[his] admission to the Virgin Islands Bar has been temporarily postponed" due to the then-pending New Jersey complaint, it is clear to us that Campbell viewed the special admission process as a formality, where the CBE simply receives "paperwork" that it and this Court proceeds to rubber stamp without performing any meaningful inquiry.

[26] Although Campbell resigned from the Department of Justice in August 2011 while the UPLC's investigation was ongoing, and there is no indication that Campbell has engaged in the unauthorized practice of law since he resigned, we do not believe his voluntary departure

practice,[27] and require Campbell to pay a $1500.00 fine to the Government of the Virgin Islands.[28] We also direct Campbell to reimburse the Virgin Islands Bar Association for the costs of the UPLC's investigation, in an amount this Court shall fix after reviewing an itemized bill of costs. *See In re Suspension of Joseph*, 56 V.I. 490, 506 (V.I. 2012). Post-judgment interest on the $1500.00 fine and cost award shall accrue at the same rate that applies to judgments rendered in Superior Court

---

renders the request for injunctive relief moot. For instance, we note that Campbell rejoined the Department of Justice in October 2009 after his earlier resignation in September 2006.

Additionally, our permanent injunction should not be construed as a prohibition against Campbell filing, at some future date, an application for admission to the Virgin Islands Bar, since we enjoin solely the unauthorized practice of law, and Campbell would be authorized to practice law in the event he became licensed to practice law in the Virgin Islands. However, prior to such an application being granted, Campbell would be required to prove his moral character and fitness to practice law, which would include addressing his instances of the unauthorized practice of law as well as the other issues identified in our March 3, 2011 Opinion.

[27] In its petition, the UPLC also requested that this Court enter a permanent injunction that would enjoin the Attorney General "from permitting employees of the Department of Justice from engaging in the practice of law in the Virgin Islands without due licensure or authorization." (Pet. 14.) As noted earlier, our October 30, 2012 Order in this matter dismissed, without prejudice, the portion of the UPLC's petition charging the Attorney General with facilitating Campbell's unauthorized practice of law, and referred those charges to the EGC for investigation and adjudication consistent with Supreme Court Rule 207. In light of the pending proceedings before the EGC, it is not necessary or proper for this Court, as part of this proceeding, to issue an injunction or order any other relief against the Attorney General. Nevertheless, we are confident that, going forward, the Attorney General, as well as the heads of other departments, agencies, organizations, and law firms, will be guided by our decision herein in determining how to utilize individuals who are licensed to practice law in other jurisdictions but who have not yet obtained admission to the Virgin Islands Bar Association.

[28] We emphasize, in the strongest terms possible, that the $1500.00 fine represents a substantial downward departure from the maximum penalty this Court could have imposed. Pursuant to section 443, this Court may impose a separate $500.00 fine for each instance of unauthorized practice of law. By our calculations, the UPLC presented clear and convincing evidence that Campbell committed approximately 35 individual violations of section 443, which would have authorized this Court to impose a $17,500.00 aggregate fine. In addition, the record reflects that Campbell earned a $105,500.00 annual salary while employed as the "Chief of the Criminal Division," despite lacking the qualifications to hold the position, and — unlike admitted attorneys — did not pay $200.00 annual Bar dues or certify compliance with annual continuing legal education requirements. Pursuant to its inherent power to regulate the practice of law, this Court could also order him to disgorge and reimburse this wrongfully earned compensation to the Government. *Accord, In re Suspension of Welcome*, 58 V.I. 604, 618 n.8 (V.I. 2013). Our decision not to order disgorgement or to impose a greater fine should be viewed as an expression of leniency in light of the mitigating factors outlined above.

proceedings. *See* 5 V.I.C. § 426. If Campbell fails to pay the fine and cost award, along with any accrued interest, by December 31, 2013, this Court may refer the matter to the appropriate authorities for collection or cite him for contempt. Finally, we direct the Clerk of this Court to transmit copies of this Opinion and the accompanying Judgment to the Clerk of the Supreme Court of New Jersey and the New Jersey Office of Disciplinary Counsel.

## IV. CONCLUSION

We hold, for the foregoing reasons set forth above, that Campbell violated the statutory prohibition against the unauthorized practice of law. Accordingly, we grant the UPLC's petition, as modified, and order a remedy consistent with the seriousness of the violations: the UPLC's requests for a declaratory judgment and an order permanently enjoining Campbell from engaging in further unauthorized practice are granted, and Campbell shall be required to pay a fine of $1500.00 to the Government of the Virgin Islands and costs to the Virgin Islands Bar Association.